561 A.2d 756

COMMONWEALTH of Pennsylvania

v.

Randy James HOYMAN, Appellant.

Superior Court of Pennsylvania.

Submitted Feb. 13, 1989.

Filed June 28, 1989.

William J. McCabe, Greensburg, for appellant.

John W. Peck, II, Assistant District Attorney, Arnold, for Com.

Before ROWLEY, McEWEN and MONTGOMERY, JJ.

ROWLEY, Judge:

This submitted case is an appeal from an order of the trial court denying appellant's second collateral petition for relief from his conviction for rape. The petition was erroneously filed pursuant to the Post Conviction Hearing Act, 42 Pa.C.S. §§ 9541–9551 (hereinafter "PCHA"), which was modified in part, repealed in part, and renamed the Post Conviction Relief Act, 42 Pa.C.S. § 9541, *et seq.*, eff. April 13, 1988, by Act of April 13, 1988, No. 47, §§ 3–4, 1988 Pa.Legis.Srv. 229–232 (hereinafter "PCRA"). The relief sought by appellant is a *nunc pro tunc* direct appeal to this Court. Appellant raises one issue for our review: whether trial counsel was ineffective for failing to file a direct appeal to the Superior Court from appellant's judgment of sentence?

A brief review of the procedural history of this case is necessary. Appellant was found guilty by a jury of Rape and Terroristic Threats. Post-trial motions were filed and denied. Appellant was sentenced on June 24, 1987. No appeal was taken from the judgment of sentence.

Appellant, on March 29, 1988, filed a *pro se* petition for relief under the PCHA in which he belatedly sought modification of his sentence. The trial court, without appointing counsel or holding a hearing, denied the petition on April 4, 1988. Appellant filed a second collateral petition May 24, 1988, which, although designated as being pursuant to the PCHA, should have been a petition under the PCRA,[1] which went into effect on April 13, 1988. In this second petition appellant alleged ineffective assistance of his trial counsel. Upon review of the petition the trial court appointed new counsel to represent appellant, and a PCRA hearing was scheduled for August 23, 1988. At the hearing, PCRA counsel stated for the record, "[a]ll we are asking for in this case is an Order where you will allow us to file an appeal to

---

1. Because the PCRA went into effect on April 13, 1988, all collateral proceedings which were instituted after that date are deemed to have been brought under the PCRA, and shall be referred to in this opinion as such. See *Commonwealth v. Lawson,* 519 Pa. 504, 506 n. 1, 549 A.2d 107, 108 n. 1 (1988).

the Superior Court *nunc pro tunc.*" N.T. 8/23/88 at 3. At the close of the PCRA hearing the court noted: "I find [counsel] negligent for [not] taking an appeal her client wanted to take." *Id.* at 21.

The next day, August 24, 1988, the PCRA court filed an opinion in which it found as a fact that the Assistant Public Defender who had represented appellant at trial failed to file a timely appeal due to a clerical error or miscommunication in her office. The PCRA court, however, went on to determine that there were no underlying issues of merit to appellant's claimed trial errors, and hence found there to have been no ineffectiveness on the part of defense counsel in failing to take the direct appeal. As a result, the trial court denied appellant's request for a direct appeal, *nunc pro tunc.* This appeal followed.

The trial court found that appellant's trial counsel had been at fault for failing to file a direct appeal on appellant's behalf. The record supports that finding. The trial court concluded, however, that the issues which appellant would have argued on direct appeal, though preserved for appellate review both at trial and post trial, had no merit and denied appellant's request to be allowed to take a direct appeal to this Court, *nunc pro tunc.* In reaching that conclusion, the trial court departed from the holding of our Court in *Commonwealth v. Miranda,* 296 Pa.Super. 441, 442 A.2d 1133 (1982).

In *Miranda,* we held that where a PCHA petitioner has alleged the ineffectiveness of his or her trial counsel for failing to take a direct appeal, the PCHA court is precluded from reaching the merits of other issues raised in the PCHA petition once the trial court determines that petitioner has been deprived of his direct appeal right and grants an appeal *nunc pro tunc. Id.,* 296 Pa.Superior Ct. at 451, 442 A.2d at 1138.

Although *Miranda* was decided under the PCHA, we hold that it is to be applied with equal force to proceedings under the PCRA. It is apparent from the record that

appellant was denied his right to appeal. The terms of the PCRA indicate that application of our decision in *Miranda* is called for in this situation. Section 9542 states in relevant part: "This subchapter is not intended to limit the availability of remedies in the trial court *or on direct appeal* from the judgment of sentence...." (emphasis added). For these reasons, in the case at bar, the PCRA court erred in addressing the merits of the substantive issues which appellant claims should have been raised on appeal. Once the court concluded that appellant was denied his right of direct appeal the proper course would have been to grant appellant leave to file a direct appeal *nunc pro tunc*. *Commonwealth v. Ciotto*, 382 Pa.Super. 458, 555 A.2d 930 (1989) (when a defendant establishes that counsel's ineffective assistance denied him *entirely* his right to a direct appeal, he is entitled to a direct appeal *nunc pro tunc* without regard to his ability to establish the merit of the issues which he seeks to raise on direct appeal).

Nor is appellant's right to file a direct appeal barred by the decision of the Supreme Court of Pennsylvania in *Commonwealth v. Lawson*, 519 Pa. 504, 549 A.2d 107 (1988). In *Commonwealth v. Lawson*, our Supreme Court determined, in the context of the PCHA, that "[a] repetitive or serial petition may be entertained only for the purpose of avoiding a demonstrated miscarriage of justice, which no civilized society can tolerate." *Id.*, 519 Pa. at 513–514, 549 A.2d at 112. Our Court has applied *Lawson* with equal force to proceedings under the PCRA. *Commonwealth v. Blackwell*, —— Pa.Cmwlth. ——, 555 A.2d 279 (1989). Moreover, the Comment to new Pa.R.Crim.P. 1507 states that "[a] second or subsequent motion should be summarily dismissed when the judge determines that the defendant has failed to make a strong *prima facie* showing that a miscarriage of justice may have occurred."[2] *Lawson* and new Rule 1507 were

**2.** The PCRA went into effect on April 13, 1988. The new Rules of Criminal Procedure 1501 through 1509, governing Post–Conviction Collateral Proceedings, were promulgated by the Supreme Court and became effective July 1, 1989. We are not applying new Rule 1507

not available to the PCRA court in this case, so this Court must determine whether such a miscarriage is present.

■ We hold that failure of trial counsel to take a direct appeal, when his client so requests, is a demonstrated miscarriage of justice within the meaning of *Lawson*. The importance of appellate rights was recognized by the U.S. Supreme Court in *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). There, the Supreme Court required appointment of counsel for indigent state defendants on their first appeal as of right.[3] Five years later, when our state constitution was amended in 1968, the legislature provided that Pennsylvania citizens have an *absolute* right to appeal. Our Supreme Court has steadfastly upheld that right:

> [A]n accused has an absolute right to appeal, Pa. Constitution, Article V, § 9, and counsel can be faulted for allowing that right to be waived unless the accused himself effectively waives the right, i.e. for not protecting the accused's right in the absence of an effective waiver.

*Commonwealth v. Wilkerson*, 490 Pa. 296, 299, 416 A.2d 477, 479 (1980).

Finally, the eminent former Chief Judge Aldisert of the Third Circuit Court of Appeals wrote just two years after our Constitution was amended:

> The courts have exhibited an increasing sensitivity to the constitutional rights of indigent defendants at the critical post-trial stage. No longer can there be any doubt that a state's obligation to furnish counsel is not discharged when the verdict is read and sentence is imposed. The equal protection clause and the due process incorporation of the sixth amendment require that an indigent be afforded the assistance of legal counsel at every critical stage throughout the criminal process. And

retroactively. Rather, we cite it as persuasive authority to enlarge our understanding of *Commonwealth v. Lawson*.

**3.** But see *Ross v. Moffit*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) (criminal defendant does not have a constitutional right to counsel for pursuit of discretionary appeals).

to insure the effectiveness of such assistance, the appointed trial attorney has been charged with the duty of respecting his client's desire to file an appeal, even if in his best professional judgment the appeal is utterly without merit.

*U.S. ex rel. O'Brien v. Maroney,* 423 F.2d 865, 868 (3d Cir., 1970).

*Ciotto, supra,* indicates that the right of *direct* appeal is superior to that of an appeal in collateral proceedings because appellant need not establish the merit of the issues he seeks to raise. The Court in *Wilkerson* recognized as much when it noted, "[the] requirement that counsel protect the appellate right of an accused extends even to circumstances where the appeal is 'totally without merit.'" *Wilkerson, supra,* 490 Pa. at 299, 416 A.2d at 479.

Nor do the decisions in *Commonwealth v. Lawson, supra,* and *Commonwealth v. Blackwell, supra,* command a contrary result. Although *Lawson* and *Blackwell* have some similarities to the case before us, there is a critical distinction between them. Mr. Lawson was the beneficiary of one (1) direct appeal and Mr. Blackwell was the beneficiary of two (2) direct appeals. Mr. Hoyman, through no fault of his own, has had none. Thus, Mr. Lawson's and Mr. Blackwell's constitutional rights to take a direct appeal were not violated and the only remaining source of relief was in a collateral proceeding where the underlying substantive issues were presented in the context of ineffective counsel. Here, Mr. Hoyman having established that an important state constitutional right has been denied him is entitled to have that right reinstated and to proceed with a direct appeal. In the case at bar, appellant told the Assistant Public Defender who had represented him at trial that he wanted to take a direct appeal, and it was determined at the PCRA hearing that she knew of appellant's request that a direct appeal was to be filed on his behalf. Through no fault of his own a direct appeal was not filed. Because a miscarriage of justice has occurred in the case at bar,

appellant is entitled to the relief he seeks in this PCRA proceeding, i.e., a *direct* appeal.

■ However, it is not necessary for us to remand the case to the trial court. Because the substantive issues appellant seeks to have considered on direct appeal have been briefed and argued by the parties, and, the record is complete, we may consider them at this time in the context of a *nunc pro tunc* direct appeal. *Commonwealth v. Miranda*, 296 Pa.Super at 456, 442 A.2d at 1140.

■ Appellant first argues that the trial court erred in permitting nurse Beverly Yakelis to testify as to whether she believed the victim was telling the truth in claiming that she had been raped. Appellant argues that this improperly impinged upon the fact-finding role of the jury. The trial court held that the contested evidence was admissible because defense counsel had "opened the door" during cross-examination. We do not agree that defense counsel opened the door to improper testimony, and hold that the trial court erred in admitting the nurse's personal opinion that the victim was telling the truth about the attack.

Nurse Yakelis testified on direct that the victim "was brought in for an alleged sexual assault." N.T. at 148. As an emergency room nurse, and pursuant to standard procedure of the emergency department at Latrobe Area Hospital, she took certain information from the victim at the time of admission. The Assistant District Attorney asked Nurse Yakelis about the victim's appearance, particularly her outward appearance. She testified that there were bits of grass on her clothing, but she didn't recall any abrasions, bruises or lacerations. When asked about the victim's emotional state, the nurse testified "[s]he was more tearful when she first came into the department. . . . [B]y the time we discharged her she was much less tearful." N.T. at 150. The nurse next testified that the victim was concerned for the safety of herself and her family for having gone to the police. Finally, the nurse related her role in collecting specimens from the physician as he removed them from the victim. She stated that she believed grass was removed from the pubic hair and rectal areas of the victim.

On cross-examination the following interchange occurred between defense counsel and Nurse Yakelis:

Q. You indicated that [the victim] came for an alleged sexual assault, is that right?

A. Right.

. . . . .

Q. She was there because there were allegations that she had been raped, is that right?

A. Yes.

Q. You made no conclusion or you—let's put it this way. You made no conclusions, in fact, she was raped, did you?

A. *As a nurse, no.*

N.T. at 153 (emphasis added).

On redirect, the Assistant District Attorney immediately asked:

Q. Mrs. Yakelis, Mrs. Mitas asked you the question whether or not you came to a conclusion that [the victim] was raped, and your answer was ["]not as a nurse, no.["] *Did you come to a conclusion as a human being whether or not you believed she was raped?*

N.T. at 156 (emphasis added). Defense counsel immediately objected on the basis that the nurse could only testify to medical records and procedures which occurred in the emergency room. The court overruled the objection and permitted the nurse to answer. She testified:

Okay, as a medical person, I am not permitted to make legal judgments and it's been our understanding and our explanation on behalf of the District Attorney's Office and the State Police that rape is in fact a legal definition, a legal term, sexual assault falls in that same category. *As a person, I would have to say that I found [the victim's] story very believable both because of the way she told it, and the fact that she was very consistent in what she said.*

N.T. at 157–58 (emphasis added). Admission by the trial court of this witness' opinion concerning the veracity of the victim's story was prejudicial error and requires the granting of a new trial.

Our Supreme Court has held that "[a]s the phenomenon of lying is within the ordinary capacity of jurors to assess, the question of a witness's credibility is reserved exclusively for the jury." *Commonwealth v. Davis*, 518 Pa. 77, 82, 541 A.2d 315, 317 (1988). This Court, as well, has held on innumerable occasions that determination of the credibility of witnesses is within the sole province of the jury. *Commonwealth v. Ferguson*, 358 Pa.Super. 98, 516 A.2d 1200 (1986); *Commonwealth v. Kale*, 331 Pa.Super. 155, 480 A.2d 291 (1984); *Commonwealth v. Ruffin*, 317 Pa.Super. 126, 463 A.2d 1117 (1983); *Commonwealth v. Battle*, 289 Pa.Super. 369, 433 A.2d 496 (1981). However, the trial court justified admission of the testimony on the basis that "defense counsel was the party to bring up this area of inquiry" and, thus, opened the door "to an area of testimony which the Commonwealth could not have brought up on its own." Trial court opinion of 4/27/87 at 4. In support of its position the trial court cites the venerable treatise, *McCormick on Evidence.*

McCormick states the general rule: "[O]ne who induces a trial court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is also allowed to avail himself of the opening." *McCormick on Evidence* § 57 (3d ed.1984). We fail to see how the defendant induced the court to let down the bars to an irrelevant or incompetent inquiry. After the Assistant District Attorney established that the witness was in a position to view the physical condition of the victim, the defense legitimately asked the witness whether she reached the conclusion "in fact, she was raped." It is apparent that by not framing the question more specifically, defense counsel risked having the nurse offer an improper personal opinion in response. But this did not happen. Nurse Yakelis limited her answer to a purely professional opinion: "As a nurse, no."

Importantly, the physical condition of the victim was within the realm of the nurse's knowledge as an assistant to the physician who performed the examination. Had Nurse

Yakelis' contact with the victim been only verbal, we would perhaps agree that the door to improper inquiry had been opened by the defense. This was not the case, however. The Assistant District Attorney established that the nurse viewed the victim, saw bits of grass on her clothing, in the vicinity of her pubic hair and rectum, yet saw no bruises, abrasions or lacerations. The defense was justified in asking whether the evidence established that the victim had been raped. That question, together with the nurse's answer which was limited to her professional capacity as a nurse, did not open the door to an otherwise improper area of inquiry. Thus, Nurse Yakelis' opinion of the veracity of the victim's story, brought out by the Commonwealth on redirect testimony, improperly impinged upon the fact-finding role of the jury.

 Next, appellant argues that the trial court erred in permitting a state trooper to testify that following the incident he overheard appellant tell his wife on the phone that "he had done something wrong." N.T. at 138. Over the objection of the defense, the trial court permitted the statement to come in on the basis that it was an admission against his interest. Although we have already determined that appellant is entitled to the remedy he seeks, a new trial, we address this issue because of the likelihood that it will arise again in the new trial.

Appellant's counsel acknowledges that declarations against penal interest are admissible as exceptions to the hearsay rule. However, defense counsel argued at trial, and appellate counsel now argues, that appellant admitted only a moral wrong, infidelity, and not a legal wrong, rape. Our Supreme Court has held:

> As a general rule voluntary, extrajudicial statements made by a defendant may be used against that defendant although they contain no admission of guilt. These extrajudicial statements, which differ from confessions in that they do not acknowledge all essential elements of a crime, are generally considered to qualify for introduction into evidence under the admission exception to the hearsay rule.

*Commonwealth v. Tervalon,* 463 Pa. 581, 590, 345 A.2d 671, 676 (1975) (footnote and citations omitted); *see also Commonwealth v.. Smith,* 518 Pa. 15, 540 A.2d 246 (1988) (citing *Tervalon* ). In *Tervalon,* the extrajudicial statement admitted at trial was the defendant's statement that he had been with a friend the evening of the crime, introduction of which followed testimony by the defendant's wife that he had been home the entire evening. *McCormick* notes that declarations against interest and admissions are at times misunderstood by lawyers. A declaration against interest must have been against the declarant's interest when made. No such requirement exists with respect to admissions. *McCormick on Evidence* § 262 (3d ed.1984). We find no error with the trial judge's ruling.

Last, appellant argues that references to facts not of record by the prosecutor in her closing argument require the granting of a new trial, and that the trial court erred in refusing to do so. Obviously, this argument is rendered moot by our decision to grant appellant a new trial.

The trial court's order of August 23, 1988, is reversed. Judgment of sentence is vacated and the case is remanded for a new trial. Jurisdiction is relinquished.

McEWEN, J., concurs in the result.