595 A.2d 1254

COMMONWEALTH of Pennsylvania

v.

Isaac Kim GILBERT, Appellant.

Superior Court of Pennsylvania.

Submitted July 15, 1991.

Filed Aug. 12, 1991.

Petition for Allowance of Appeal Denied Dec. 13, 1991.

492

Shelley Stark, Public Defender, Pittsburgh, for appellant.

Kemal A. Mericli, Asst. Dist. Atty., Pittsburgh, for the Com., appellee.

Before CIRILLO, JOHNSON and HESTER, JJ.

HESTER, Judge:

Appellant, Isaac Kim Gilbert, appeals the December 18, 1990 denial of his petition filed under the provisions of the Post–Conviction Relief Act. The issue presented is whether a post-conviction petitioner must automatically be granted the right to petition the Supreme Court for allowance of appeal *nunc pro tunc* from our prior affirmance of his criminal conviction on direct appeal, regardless of the merits of the issue foregone by direct appeal counsel. We conclude that a defendant does not automatically have that right and affirm the decision of the PCRA court, which denied appellant's second petition for post-conviction relief.

On August 22, 1985, a jury convicted appellant of attempted homicide, aggravated assault, and carrying an unlicensed firearm. The criminal incident occurred on October

1, 1984. The victim, Regis Kelly, was a Pittsburgh Police Officer who was attending an event at Three Rivers Stadium in Pittsburgh with two of his friends, Rose DiVicino and fellow officer Edward Luke. Both officers were off-duty at the time. Officer Kelly testified as follows. While Kelly and Rose were getting refreshments, appellant threw napkins at Rose. Rose and appellant apparently had been involved in a romantic relationship. Kelly asked appellant, whom Kelly said he did not know, if he had thrown the napkins deliberately, and appellant responded that he had. The officer decided to walk away.

As he turned to leave, Officer Kelly felt something strike his back. Kelly informed appellant that he was a police officer and that appellant should calm down. Kelly stated that appellant then struck him in the face while Willard Clark, appellant's companion, jumped him and threw him to the ground. Kelly freed himself from the two men, pulled out his badge, and informed them that they were under arrest. Appellant pulled out a revolver and pointed it at the officer's head. Kelly told appellant to put the gun away, but he did not comply. The officer then drew his own revolver, pushed appellant back, and again told him that he was under arrest. According to Officer Kelly, appellant then started to rush through the crowd, shouting threats at the officer, including a threat to kill him by shooting him in the face. Kelly chased appellant, who eventually left the stadium through a turnstile and hid behind a pillar. When Kelly followed, appellant came from behind the pillar and fired one shot, which struck the officer in the face. Kelly returned the fire, and appellant was struck by four bullets.

Robert Yankowski witnessed the incident and testified as follows. Appellant initiated the altercation by pulling on Rose's coat. The two men exchanged words, and Officer Kelly started to walk away. Appellant then punched Kelly, Clark joined the fight, Kelly backed up and displayed his wallet to appellant, and appellant drew a gun. Kelly then drew his gun, the two men talked, and appellant started to leave the refreshment area with Kelly following. The wit-

ness saw appellant leave the stadium through a turnstile, hide behind the pillar, and fire his gun at Kelly as Kelly followed him through the turnstile. Mr. Yankowski stated positively that appellant fired first.

In his defense, appellant presented a number of witnesses who gave various versions of events. One suggested that Officer Kelly initiated the altercation by throwing a drink on appellant's coat. Several thought that Kelly drew his gun first. Another stated that appellant did not have his gun drawn while leaving the refreshment area and drew it only after Kelly followed him. The witnesses, however, consistently stated that Kelly did not draw his revolver until he was attacked physically by appellant. Defense witnesses also confirmed that Kelly identified himself as an officer and attempted to place appellant under arrest before appellant left the refreshment area. Clark testified for appellant, giving a completely different version of events. He stated that appellant drew his gun *after* Kelly both physically attacked appellant and drew his gun and that appellant tried to leave the area when Kelly displayed his gun.

Post-trial motions, which contained numerous allegations of trial error, were filed and denied. Appellant was sentenced to six to twelve years imprisonment. The sentencing transcript indicates that after imposition of sentence, the sentencing court informed appellant that he had the right to appeal within thirty days and that he had the right to proceed as an indigent and to be provided "free counsel." Notes of Testimony, 3/20/86, at 8. Trial counsel, who was privately retained, continued to represent appellant on direct appeal and asserted that the jury instructions were in error. We affirmed. *Commonwealth v. Gilbert,* 364 Pa.Super. 645, 525 A.2d 815 (1987). No petition for allowance of appeal was filed.

On August 11, 1988, appellant filed his first petition for post-conviction relief. Counsel was appointed. Two issues were addressed by the PCRA court when it denied this petition. The court rejected appellant's allegation that trial counsel was ineffective for failing to introduce evidence

regarding appellant's injuries. The court observed that evidence regarding appellant's injuries, including appellant's discharge summary, had been introduced at trial. The court also noted that appellant's affidavit supporting post-conviction relief indicated that after trial, Officer Kelly had made statements which indicated that he had been the aggressor in the incident. The court concluded that the statements would be used solely for impeachment purposes and therefore were not grounds for the grant of a new trial. The appeal from denial of this first post-conviction petition was quashed as untimely.

On November 14, 1989, appellant filed a second, counseled petition for post-conviction relief, raising numerous allegations of error. Among other relief, appellant sought reinstatement of his right to seek a petition of allowance of appeal from our decision in the direct appeal. Hearings were held on this petition on January 19, 1990, and August 1, 1990. This appeal followed denial of relief. Appellant raises one issue for our review. He contends that first post-conviction counsel was ineffective for neglecting to raise the ineffectiveness of direct appeal counsel in failing to file a petition for allowance of appeal from our affirmance of the judgment of sentence. He seeks the opportunity to file for Supreme Court review on the issue of the propriety of the jury instructions on self-defense. He fails, however, to present any argument as to how the instructions were in error.

Thus, appellant's contention is that he automatically is entitled to reinstatement of his right to petition for allowance of appeal *nunc pro tunc* from our decision in his direct appeal. We observe that the following was established at the PCRA hearings. One issue was pursued on direct appeal—that the jury instructions warranted a new trial because the trial court should have charged on simple assault and incorrectly charged on the use of force in self defense. Direct appeal counsel informed appellant of our decision affirming the judgment of sentence, indicated that he would seek review of that decision by the Supreme

Court, and told appellant that he thought the issue should be pursued. Counsel also told appellant about the retainer he required to pursue the matter, the time limitations involved, and the necessity of paying counsel's unpaid fees. Counsel did not inform appellant that he had the right to free counsel if he could not afford one.

Appellant argues that he wanted to seek review of the jury instruction issue by the Supreme Court, but he could not afford to pay for private counsel. He also suggests that he did not know he had the right to court-appointed counsel. He argues that the fact that he did not know of this right entitles him automatically to reinstatement of his right to petition for allowance of appeal. Appellant relies upon a case decided under the provisions of the former Post–Conviction Hearing Act. That case supports his position.

In *Commonwealth v. Clarke*, 300 Pa.Super. 366, 446 A.2d 658 (1982), we held blanketly and without discussing the merits of the underlying issue that on a second petition for post-trial relief, a defendant was entitled to reinstatement of his right to petition for allowance of appeal *nunc pro tunc* from our affirmance of his judgment of sentence on direct appeal. We failed to elaborate on our reasoning, except to refer to *Commonwealth v. Daniels*, 491 Pa. 289, 420 A.2d 1323 (1980), which holds merely that an indigent defendant has the right to court-appointed counsel for purposes of seeking review by the Supreme Court.

In *Commonwealth v. Morrow*, 326 Pa.Super. 443, 474 A.2d 322 (1984), we retreated from this per se rule and held that if a defendant knows of his right to file a petition for allowance of appeal, counsel is not automatically deemed ineffective for failing to seek review by the Supreme Court. We concluded that a defendant must elaborate on the merits of the issue that counsel abandoned in failing to seek Supreme Court review.[1]

1. In *Commonwealth v. West*, 334 Pa.Super. 287, 482 A.2d 1339 (1984), we distinguished the *Morrow* decision. In *Morrow*, we noted that the defendant knew about his right to seek allowance of appeal. In *West*,

We conclude that *Clarke* is no longer viable precedent in light of both new Supreme Court pronouncements in the area of the post-conviction proceedings and the changes made in the right to collateral relief by the enactment of the PCRA. We believe that *Morrow* contains the reasoning that should be applied under this new authority. When *Clarke* was decided, layered allegations of ineffective assistance of counsel automatically overcame the waiver and finally-litigated provisions applicable to post-conviction proceedings. Thus, layered allegations of prior counsels' ineffectiveness warranted review of any issue, regardless of the number of post-conviction petitions already filed by the defendant.

Since our decision in *Clarke*, however, this principle governing entitlement to post-conviction relief has been abrogated. In *Commonwealth v. Lawson*, 519 Pa. 504, 549 A.2d 107 (1988), the Supreme Court specifically overruled prior precedent and concluded that layered allegations of ineffective assistance of counsel were no longer sufficient to overcome the waiver and finally-litigated provisions relating to post-conviction proceedings. The Court in *Lawson* held that a second or any subsequent petition for post-conviction relief will not be entertained "unless a strong *prima facie* showing is offered to demonstrate that a miscarriage of justice may have occurred." *Id.*, 519 Pa. at 513, 549 A.2d at 112; *see also Commonwealth v. Blackwell*, 384 Pa.Super. 251, 558 A.2d 107 (1989) (applying *Lawson* standard of review to second or subsequent petitions filed under the PCRA). This standard is met if the petitioner can demonstrate either that the proceedings resulting in his conviction were so unfair that a miscarriage of justice which no civilized society can tolerate occurred or that he is innocent of the criminal charges.

since the record established that the defendant was not timely informed of that right, we granted him the right *nunc pro tunc* to seek review by the Supreme Court. Since the record herein establishes that appellant knew about his right before the time period for seeking review had passed, *West* is not pertinent.

■ The issue then is whether counsel's failure to file a petition for allowance of appeal, without regard to the claim sought to be raised, is a miscarriage of justice requiring reinstatement of the right to seek allowance of appeal. We conclude that it is not. Initially, we must examine whether our holding in *Commonwealth v. Hoyman*, 385 Pa.Super. 439, 561 A.2d 756 (1989), applies herein. There, we concluded that trial counsel's failure to file a direct appeal when requested by a defendant is a demonstrated miscarriage of justice, and regardless of the number of prior post-conviction petitions, a criminal defendant has the automatic right to appellate review where the conviction was never accorded that review. We do not believe that the reasoning in *Hoyman* should be extended to the present case, *i.e.*, where direct review by the Superior Court was exercised but further appellate review was not sought. The reasoning of *Hoyman* does not apply because *Hoyman* rests on the significant constitutional right granted in our state constitution to one appellate review of a criminal conviction. Pa. Const. art. V. § 9.

Unlike the one absolute right to appellate review at issue in *Hoyman*, however, we are dealing in this case with the the right to review by our State Supreme Court of our decision on direct appeal. Review by the Supreme Court following Superior Court review is not constitutionally guaranteed. In fact, it is purely discretionary and will be granted only where there exist both special and important reasons. Pa.R.A.P. 1114. It would be illogical to conclude that a miscarriage of justice occurred by counsel's failure to seek Supreme Court review unless it is established that the issue was such that review would have been granted by the Supreme court. While one appellate review of a conviction is constitutionally compelled and absolute, Supreme Court review following Superior Court review is purely discretionary. If Supreme Court review is predicated upon demonstration of special and important reasons, how could we conclude that an injustice occurred unless the defendant

establishes that the Supreme Court would have exercised its discretion and reviewed the issue?

In addition, we observe that our reasoning in *Hoyman* also rests upon the United States Supreme Court's conclusion that an indigent defendant must be afforded free counsel for purposes of a direct appeal of right under the due process and equal protection clauses of the fourteenth amendment to the United States Constitution. Whereas, the United States Supreme Court has concluded that an indigent defendant does not have to be provided free counsel for purposes of a discretionary appeal. *Compare Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (constitution requires court-appointed counsel for first appeal as of right), *with Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) (there is no constitutional right to court-appointed counsel for pursuit of discretionary appeal).

We therefore hold that the bare allegation that appellate counsel was ineffective for failing to seek allowance of appeal to the Supreme Court does not state a claim that is cognizable under *Lawson* and that the post-conviction petitioner is not automatically entitled to reinstatement of the right to petition our Supreme Court for review. *See also Commonwealth v. Brimage*, 398 Pa.Super. 134, 580 A.2d 877 (1990) (where right to direct appeal has been exercised, there is no absolute right to appeal from a PCHA or PCRA order and reinstatement of appellate rights nunc pro tunc from denial of PCRA relief will not be granted automatically upon allegations that PCRA counsel was ineffective for failing to seek appellate review of such denial). In closing, we note that since appellant was informed at the sentencing that he was entitled to court-appointed counsel on appeal if he were indigent, we reject his allegation that he did not know he had the right to court-appointed counsel for purposes of the petition for allowance of appeal. Thus, we cannot consider whether such a lack of knowledge would alter our result in this decision.

Order affirmed.