617 A.2d 754

COMMONWEALTH of Pennsylvania

v.

Kenneth PATE, Appellant.　(Two Cases)

Superior Court of Pennsylvania.

Submitted Sept. 21, 1992.

Filed Dec. 3, 1992.

124

James S. Bruno, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before: OLSZEWSKI, FORD ELLIOTT and HESTER, JJ.

OLSZEWSKI, Judge:

Before us are two separate appeals lodged by appellant Kenneth Pate ("Pate"). He appeals the judgment of sentence entered against him on May 24, 1984, and from an order denying relief in part under the Post–Conviction Relief Act ("PCRA"). This latter order was entered in February, 1991. After a careful review of the complex procedural irregularities in this case, we affirm the judgment of sentence and dismiss Pate's appeal from the PCRA court as unnecessary.

We begin our discussion by untangling the procedural web that has been woven, beginning in 1981. We will then discuss Pate's substantive claims, all of which allege ineffectiveness of trial and post-verdict counsel.

## I.

On February 13, 1981, Pate was arrested and charged with the murder of Tommy Garcia. Garcia died after Pate allegedly confronted him in a bar and shot him in retaliation for an incident that occurred between the two some months earlier. Attorney Joseph Santaguida was assigned to represent Pate during the subsequent proceedings.

Under Pennsylvania Rule of Criminal Procedure 1100, Pate should have been tried by May 26, 1981. On May 21, however, the Commonwealth filed for an extension of time within which to bring Pate to trial. The basis for this motion appears to be that the Commonwealth was having trouble communicating with Mr. Santaguida. The motion was uncontested by Santaguida, who acknowledged that he was unavailable due to a full trial schedule and was having trouble locating several defense witnesses. The court granted an extension until November 20, 1981. As that date approached, another extension was filed and granted. The basis for that motion is not contained in the record. Pate was eventually tried and convicted in January, 1982.

After nearly two years had passed,[1] the trial court heard Pate's numerous post-trial motions. Among other things, Pate contended in the motions that his right to a speedy trial had been violated, counsel was ineffective for failing to introduce certain alibi witnesses, for failing to object to certain alleged inflammatory prosecutorial remarks, and for improp-

---

1. The record is incomplete from the date of Pate's conviction, January 13, 1982, to the date that the post-trial motions were denied, May 16, 1984. During that period, it appears as though Pate sought appointment of new counsel for his post-trial motions. The case went to the Supreme Court, and the late Chief Justice Roberts ordered the post-trial motions to be heard in an expedited manner on December 30, 1983. Therefore, we will not question the seemingly untimely nature of the disposition of the post trial motions.

erly eliciting Pate's prior criminal record. The trial court denied these motions and sentenced Pate. Pate did not file a direct appeal to this Court.

Pate filed several collateral petitions which were heard and denied. On December 26, 1989, Pate filed a PCRA petition. This petition alleged that Pate was denied effective assistance at trial because trial counsel failed to move to dismiss the prosecution under Rule 1100 and failed to introduce a new alibi witness. He also alleged that he was denied his constitutional right of direct appeal because his counsel failed to file an appeal. The Honorable James McCrudden held an evidentiary hearing, at which Pate was represented by newly appointed counsel. In his opinion of February 21, 1991, Judge McCrudden dismissed Pate's speedy trial and ineffective claims after addressing the merits, but agreed that Pate's right to direct appeal had been violated. He thus granted Pate leave to file an appeal *nunc pro tunc* to this Court.

In response to this order, Judge Murphy, the original trial judge, directed Pate to file a statement of matters complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Current counsel filed the statement on Pate's behalf. The statement presented the identical substantive issues addressed by the PCRA court, as well as the issues raised in the original post-trial motions that were disposed of in 1984. In his opinion supporting his 1984 ruling, Judge Murphy declined to address the speedy trial and alibi witness issues, since he felt that the PCRA court had effectively disposed of them. He thoroughly addressed Pate's claims concerning the prosecutorial misconduct and prior bad acts on the merits. Two matters arise from this procedural labyrinth that are problematic: (1) Pate's direct appeal from the PRCA's denial of substantive relief, and (2) Judge Murphy's incorporation of the PCRA's discussion of the merits of Pate's arguments into his opinion which supports his denial of Pate's 1984 post-trial motions.

The difficulty stems from the rule that once a PCRA court determines that a petitioner's right to direct appeal has been violated, the PCRA court is precluded from reaching the merits of other issues raised in the petition. *Commonwealth*

*v. Hoyman,* 385 Pa.Super. 439, 561 A.2d 756 (1989). In *Hoyman,* the PCRA petitioner claimed that his right to direct appeal was violated because his counsel failed to file it. The PCRA court agreed, but denied him leave to file a direct appeal *nunc pro tunc,* since it found that his claims lacked merit. We held that the PCRA should not have addressed the petitioner's substantive claims on the merits. Rather, once the PCRA court finds that the petitioner's appellate rights have been abridged, it should grant leave to file a direct appeal and end its inquiry there. *Id.* at 443, 561 A.2d at 758; *Commonwealth v. Miranda,* 296 Pa.Super. 441, 442 A.2d 1133 (1982).

■ Judge McCrudden improperly addressed Pate's speedy trial claim and ineffectiveness claim on their merits. Thus, an appeal from Judge McCrudden's decision is unnecessary, and Judge Murphy's reliance on it is erroneous. To determine the effect of the procedural irregularity in this case, both legal and pragmatic considerations will be our guide.

■ First, Judge McCrudden did not have the power, under *Hoyman,* to reach the merits of Pate's claims. This is tantamount to a judge acting without subject matter jurisdiction. A court has the inherent power to determine on its own motion whether it has the power to hear a cause in front of it. *Barndt v. Barndt,* 397 Pa.Super. 321, 580 A.2d 320 (1990). Moreover, "[w]hen a Judge exercises a power not conferred upon him by law, his act is more than a mere irregularity, which can be waived by Defendant, it is a nullity." *Commonwealth v. Miller,* 306 Pa.Super. 468, 471, 452 A.2d 820, 821 (1982). Judge McCrudden's disposition of Pate's claims, insofar as they affect Pate's rights, was ineffectual. The proper forum to decide the merits of these issues, having determined that Pate is entitled to a *nunc pro tunc* appeal, is in this Court. An appeal from Judge McCrudden's ruling is therefore a nullity, and we will not address it.[2] *See Commonwealth v. Miranda,* 296 Pa.Super. 441, 452, 442 A.2d 1133, 1138 (1982) (when PCHA court erroneously addresses merits of petition-

2. We must note that while we are not considering Pate's appeal from the PCRA hearing, those same substantive issues are raised in Pate's

er's substantive claims, that court's disposition is merely evidentiary and does not result in a separate appealable order).[3]

Second, we must consider the effect of Judge Murphy's improper reference to the PCRA court's opinion in his opinion. Although Judge Murphy's incorporation was legally improper, we hold that it will not impede us from meaningfully reviewing Pate's substantive claims. Pennsylvania Rule of Appellate Procedure 1925 provides:

(a) *General rule.* Upon receipt of the notice of appeal the judge who entered the order appealed from, if the reasons for the order do not already appear from the record, shall forthwith file of record at least a brief statement, in the form of an opinion, of the reasons for the order, or for the rulings or other matters complained of, or shall specify in writing the place in the record where such reasons may be found.

Pa.R.A.P., Rule 1925(a), 42 Pa.C.S.A.

The purpose of the rule is two-fold. First, it gives the appellate court a reasoned basis for the trial court's

direct appeal. We distinguish between these two appeals in order to address the issues under the proper framework.

3. Although *Miranda* was decided under the PCHA, its reasoning was adopted under *Hoyman,* which was decided under the PCRA. We recognize that in *Commonwealth v. Rodriguez,* 526 Pa. 268, 585 A.2d 988 (1991), Justice Larsen was of the view that where the PCHA court is faced with an issue that was not decided on the merits at the trial court level, and decides that appellant's appeal rights were violated, it is "patently incorrect" for the PCHA judge to defer to the appellate courts on the issue. Judge Larsen's statement, however, does not control our disposition of this case. First, since *Rodriguez* was decided under the PCHA, and this case is under the PCRA, we will follow the scheme elaborated in *Hoyman* unless persuaded or directed otherwise. Second, the issue of whether the PCHA judge properly deferred to the appellate court was not at issue in *Rodriguez,* and was not essential to the holding there. Thus, we believe that our decision here is consistent with the scheme set out in *Hoyman.* Moreover, holding that the PCRA court's discussion of the issues is mere evidence of the issue before us is helpful in avoiding duplicative appeals. Pate could have raised his ineffective claim for the first time in this Court, since he is now alleging, through new appellate counsel, that trial and post-trial counsel were ineffective. Using the PCRA court's disposition effectively obviates the need for a remand while allowing us to thoroughly review the issues properly before us for the first time on direct appeal.

disposition of the challenged orders. Second, it requires the judge to thoroughly consider his decision regarding the post-trial motions, in order to correct any problems that occurred at the trial level. This prevents unnecessary appeals. *Commonwealth v. Norris,* 256 Pa.Super. 196, 389 A.2d 668 (1978). Normally, a trial judge may not simply defer to earlier rulings of other judges or decline to address an issue, as this would defeat the purpose of ensuring thorough consideration of the issues at the trial court level. *Id.* at 197, 389 A.2d at 669. The remedy for non-compliance with the rule is a remand to the trial judge. *Commonwealth v. Kinsel,* 403 Pa.Super. 67, 588 A.2d 34 (1991).

We find that despite Judge Murphy's technical non-compliance with the rule, a remand is unnecessary. First, Judge Murphy did consider all of the issues raised by Pate's post-trial motions and pointed us to the places in the record where we can find his reasoning. Although he based his reasoning in part on Judge McCrudden's rationale, we nonetheless have a clear picture of Judge Murphy's reasoning. To remand this case to Judge Murphy for the purpose of putting the same rationale in his own words would be wasteful. Although Judge McCrudden's opinion had no effect on Pate's appeal, to ignore the fact that his rationale is sound, and that Judge Murphy adopted the same reasoning, would unnecessarily elevate form over substance. This case has been unsettled for over eleven years. Since we have the benefit of Judge Murphy's rationale, we may meaningfully review Pate's claims.

Moreover, we have a complete record and can conduct a complete review. Thus, despite the procedural defect, we can proceed to a review on the merits. *Hoyman* at 446, 561 A.2d at 759. We also have the benefit of the PCRA court's evidentiary hearing. The law in this area recognizes that although the PCRA court may not properly review the merits of Pate's substantive claims when his direct appeal rights have been violated, that court's review will serve the evidentiary purpose of completing the record for appellate review. *Miranda* at 452, 442 A.2d at 1139. The PCRA court held a full evidentiary hearing and considered the claims, which we may

consider as part of the record on direct review. Our ability to review Pate's claims is in no way compromised. We proceed to his substantive claims. *Hoyman, supra.*

## II.

Pate's direct appeal raises four issues for consideration. He claims that trial counsel was ineffective for: (1) failing to interview and subpoena a potential alibi witness; (2) failing to file a motion to dismiss after the Commonwealth failed to bring Pate to trial in 180 days; (3) eliciting prior criminal activity during the cross-examination of a Commonwealth witness; and (4) failing to object to allegedly improper remarks during closing argument.

The standard by which we view an ineffectiveness claim is well settled.

Claims of ineffectiveness are subject to a three part analysis. First it must be demonstrated that the underlying claim is of arguable merit. Next, it must be determined whether counsel's choice of action had some reasonable basis designed to effectuate his or her client's interests. Finally, a showing must be made of how counsel's choice of action prejudiced the client. The law presumes that counsel was effective, so the burden of establishing ineffectiveness rests squarely upon the defendant. Moreover, counsel will not be deemed ineffective for failing to assert a baseless claim.

*Commonwealth v. Lebo,* 405 Pa.Super. 316, 592 A.2d 353 (1991) (citations omitted).

We will address each of Pate's contentions in turn.

## 1.

Pate claims that counsel was ineffective for failing to call a potential alibi witness. Pate's sister, Lucretia Muchison, testified at the PCRA evidentiary hearing that she was with Pate on the evening of the incident. Pate claims that both trial and post-trial counsel failed to interview or subpoena Muchison to testify.

In order to prove that this claim has arguable merit, the defendant has the burden to prove that the witness was available, that counsel knew or should have known of her existence, that the witness was prepared to testify at trial and that her absence so prejudiced defendant as to deny the defendant a fair trial. *Commonwealth v. Petras*, 368 Pa.Super. 372, 534 A.2d 483 (1987). From the testimony adduced at the evidentiary hearing, we cannot conclude that Pate has carried his burden that both trial and post trial counsel were ineffective.

At the PCRA hearing in 1989, Muchison testified that Pate was playing cards at her home on the date of the incident, November 22, 1980. She recalled this evening because the evening card games with Pate and his girlfriend were part of a daily routine. She also testified, however, that she did not find out about Pate's arrest until months after he was in jail, although Pate was apparently living with her at the time. She made no effort to ascertain Pate's whereabouts or attend his trial. Judge McCrudden, who properly held the evidentiary hearing on this matter found Muchison's testimony entirely incredible. We will not disturb that evidentiary finding. *Commonwealth v. Nelson*, 393 Pa.Super. 611, 574 A.2d 1107 (1990); *see, Commonwealth v. Moore*, 321 Pa.Super. 442, 468 A.2d 791 (1983) (credibility of witnesses in collateral proceedings exclusively within province of the hearing court).

Moreover, trial counsel testified that he was not familiar with Muchison. He could not testify that he was informed of her existence. As such, we must hold that appellant has not met his burden in proving that she was available to testify and known to trial counsel.

Pate simply has not met his burden to prove that this witness was known to trial counsel or would have added anything material to his trial. We find that his claim fails.

2.

Pate also claims that counsel was ineffective for failing to file a motion to dismiss the prosecution against Pate. He claims that trial counsel should have asserted his rights under

Rule of Criminal Procedure 1100 when the Commonwealth sought an extension of time after the first 180–day "rundate" was about to expire.

The facts surrounding this claim can be briefly summarized. A warrant was issued for Pate's arrest on November 25, 1980. He was arrested and charged on February 13, 1981. The 180–day rundate was set to expire on May 26, 1981. On May 21, the Commonwealth moved for an extension of time until November of that same year. At the hearing, the Commonwealth's counsel proffered that he would be ready to proceed upon any listing, but that he was having difficulty preparing due to defense counsel's unavailability. (N.T. 6/24/81, at 3.) In considering the motion, the trial judge conferred with defense counsel:

> Mr. Santaguida: I read the Commonwealth's petition Judge, and I don't know if I have any quarrel with it, with any of the facts that are alleged in it.
>
> \* \* \* \* \* \*
>
> The Court: When do you think you will be able to try this case, Mr. Santaguida? Are you ready now?
>
> Mr. Santaguida: No your Honor. We have one defense witness who was in the Job Corps. She is going to be here—I'm not sure when she is going to be here to stay for a while. Also, your honor, there are one or two other witnesses that we are trying to contact.

*Id.* at 2, 4.

The trial judge then granted the continuance until November 20, 1981. Pate was eventually tried and convicted in January, 1982.[4] Simply stated, Pate, through counsel, did not contest the motion for extension of time. Rather, he acquiesced to it. All time attributable to his acquiescence is excludable when computing time under Rule 1100. *Commonwealth v. Guldin,* 502 Pa. 66, 463 A.2d 1011 (1983). In *Guldin,* our Supreme Court held that defense counsel had in effect

---

**4.** A second extension was requested and granted in November of 1981. Pate does not raise any issue regarding this second extension in his Statement of Questions Presented. We therefore only consider the extension granted in June of 1981.

asked for a continuance when he responded "[u]nder these circumstances, I do not believe that I would resist a motion from the district attorney if they wanted to extend the 180 day rule, Your Honor." *Id.* at 71, 463 A.2d at 1014. The court went on to say that:

Rule 1100 was never intended to be used as a device by which a defendant may escape responsibility for his actions, especially where such defendant makes a representation through his attorney that it is not in his best interests to proceed to trial.

*Id.*

We find that this case is on all fours with *Guldin.* Trial counsel was not ineffective for failing to object to the Commonwealth's motion for an extension of time.

### 3.

Pate also contends that trial counsel was ineffective for eliciting a prior bad act of Pate's while cross-examining Commonwealth witness, Barbara Blanding. He claims that by eliciting a testimony describing a past event in which Blanding accused Pate of robbing her daughter, counsel unreasonably enlightened the jury to Pate's criminal past. This argument is completely meritless.

As the trial court found, counsel's strategy during Blanding's cross examination was to show her bias that resulted from "bad blood" between her and Pate. This theory of impeachment is entirely appropriate and hardly ineffective.

### 4.

Pate also argues that counsel was ineffective for failing to object to certain allegedly inflammatory remarks made by the prosecution during his closing argument. We find that all four instances of alleged prosecutorial misconduct were fair comments on the evidence and fair responses to arguments made by defense counsel during his closing argument. Thus, defense counsel cannot be ineffective for failing to object to them. *Commonwealth v. Johnson,* 527 Pa. 118, 588 A.2d 1303 (1991).

 First, Pate claims that the prosecutor improperly inflamed the jury when he referred to the victim as a "nice guy" and that "finding Pate guilty of the crime won't bring him back." These quotes are clearly taken out of context.

The prosecutor argued:

The further temptation, if you look at it as a story, is to say, "Thomas Garcia is not here and we feel bad about him dying, and he had a family, and he was probably a nice guy, but nothing in the world can bring him back again. Finding Kenneth Pate guilty of the crime can't bring him back." Well, you can't look at it that way either. *Sometimes you have to take a detached view of everything you heard here and just decide whether or not the Commonwealth met the burden of proving the defendant guilty.*

\* \* \* \* \* \*

You are not allowed to switch places with the decedent's family and you are not allowed to exchange places with the defendant. *You have to be cool and detached about this whole thing,* and I know it is difficult, but you took an oath to do that and now you have to follow your oath, each of you.

(N.T. 1/12/82, at 71–72) (emphasis added).

The prosecutor was merely commenting on the evidence at trial and explaining to the jury that they had to leave personal feelings aside and reach an objective decision. This is entirely proper.

 Second, Pate argues that the Commonwealth improperly commented on the defense's failure to call an eyewitness, Evelyn Rolon. Pate simply disregards the fact that his counsel commented on the Commonwealth's failure to call Rolon:

... I think you have to ask yourselves why Evelyn Rolon wasn't called by the Commonwealth. And again, like I said, she was available. I could have called her. She was here, but I don't have any burden to call her. They have the burden.

(N.T. 1/12/81, at 48–49.)

The defense clearly commented on the failure of this witness to testify. The most harsh response by the Common-

wealth was simply that "[the defense attorney cannot] ask you to infer that the Commonwealth is hiding something by not calling her." *Id.* at 63. These comments are fair responses to defense counsel's argument.

 Third, Pate claims that the Commonwealth commented on the credibility of Barbara Blanding. While explaining that the jury had to determine Blanding's credibility, the prosecutor stated:

> Now, one of the ways that you decide credibility is to observe the demeanor of the witness herself. Did she appear to be the type of person that would come into a courtroom and tell a lie about murder just because your daughter had trouble with the same person? I don't think so, but that is for you to decide.

*Id.* at 70–71.

The trial court properly found that taken in context, the prosecutor's remark was meant to isolate his opinion in an effort to explain the proper fact-finding function of the jury. Even if the statements were improper, Pate is equally responsible for the infraction. Pate's counsel argued to the jury that Blanding was biased and concluded, "So, does she have a reason to lie? I think so." *Id.* at 42. Pate may not have his cake and eat it too. The prosecutor was responding to the defense's assertion. This is also proper.

 Finally, Pate argues that it was improper for the prosecutor to urge the jury: "Don't send Kenneth Pate back out on the street again." As the trial court correctly noted, Pate has mischaracterized the Commonwealth's argument.

The Commonwealth was reinforcing the jury's duty to fairly assess the evidence. The prosecutor stated:

> But ladies and gentlemen, if you are convinced that Kenneth Pate shot the deceased and intended to kill him, have the courage to return a verdict of first degree murder. Don't send Kenneth Pate back on the street again, if you are convinced otherwise.

*Id.* at 84.

This statement merely explained to the jury that it had a difficult task, but one that had to be done if the evidence was

sufficient. It was not a personal plea. This statement was not improper.

We conclude that since the prosecutor's challenged remarks were proper, counsel was not ineffective for failing to object to them.

On the basis of the reasoning above, we order that Pate's appeal from the PCRA court be dismissed, and that the judgment of sentence be affirmed. Order affirmed.

FORD ELLIOTT, J., concurs in the result.