COMMONWEALTH of Pennsylvania, Appellee,

v.

**Darrell MILLER, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 4, 2004.
Filed Feb. 7, 2005.

---

Emily B. Cherniack, Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: DEL SOLE, P.J., PANELLA and TAMILIA, JJ.

OPINION BY DEL SOLE, P.J.:

¶ 1 This is an appeal from the PCRA court's disposition of Appellant's petition filed pursuant to the Post Conviction Relief Act ("PCRA"). In Appellant's PCRA petition, he sought: (1) reinstatement of his direct appeal rights *nunc pro tunc;* and (2) a new trial based on trial counsel's ineffectiveness. Following a hearing, the PCRA court granted Appellant reinstatement of his direct appeal rights *nunc pro tunc;* it also went on to address the merits of Appellant's ineffectiveness claim, finding it without merit. Appellant now seeks to appeal the latter portion of the PCRA

court's order; we are presented with a procedural problem.

■ ¶ 2 Because the PCRA court granted Appellant reinstatement of his appellate rights *nunc pro tunc*, its consideration of Appellant's additional issue did not result in a disposition Appellant could appeal.

■ ¶ 3 When a PCRA court grants a request for reinstatement of direct appeal rights *nunc pro tunc*, it may address, but not "reach" the merits of any remaining claims. *Commonwealth v. Hoyman*, 385 Pa.Super. 439, 561 A.2d 756, 758 (1989).[1] This delicate distinction has caused some confusion. *See Commonwealth v. Pate*, 421 Pa.Super. 122, 617 A.2d 754, 757–58 (1992) ("once the PCRA court finds that the petitioner's appellate rights have been abridged, it should grant leave to file a direct appeal and end its inquiry there.") The PCRA court may **inquire**, but its inquiry can not result in an appealable disposition. The procedure a PCRA court in this situation should follow was set forth in *Commonwealth v. Miranda*, 296 Pa.Super. 441, 442 A.2d 1133 (1982).[2]

¶ 4 The *Miranda* Court conducted a thorough review of the Supreme Court decisions concerning the power of a court to grant *nunc pro tunc* relief and the proper procedure for addressing additional claims raised in the same post-conviction petition requesting the *nunc pro tunc* relief. In conclusion, the Court found the following procedure should be followed:

> [T]he [PCRA] court must address the other claims raised in the [PCRA] petition when it is necessary to complete the record for appellate review; but under these circumstances, the [PCRA] court

is merely functioning as an evidentiary tribunal. Implicit in *Sullivan's*[3] rationale is the directive that proceedings in the [PCRA] court relating to issues other than the one involving lack of appellate rights, are not to be decided on the merits, but rather the [PCRA] court is to see to it that the record is made complete on these issues for the purpose of review in the appellate court on the *nunc pro tunc* appeal. Thus, all supplemental issues raised, reviewed, and ruled upon in the PCHA proceedings would be adequate for review in the *nunc pro tunc* appeal before us; in other words, only one appeal, the *nunc pro tunc* appeal from the judgment of sentence, would be presented to us.

. . .

[O]nce the [PCRA] court decides the accuracy of the deprivation of appellate rights claim and grants the *nunc pro tunc* appeal, its review of any remaining claims would not be considered final review of the issues, but would only be seen as serving the evidentiary purpose of completing the record for appellate review. As such, the evidentiary review would not result in a separate appealable order. The outcome of this situation would instead result in the filing of the *nunc pro tunc* appeal, where petitioner could raise all issues which have been adequately preserved, and where he would have the benefit of final review by the traditional appellate tribunal.

*Miranda*, 442 A.2d at 1138–39.

■ ¶ 5 Thus, a PCRA court may act as a fact-finder and issue "advisory" opinions

---

1. *Hoyman* specifically prohibited a PCRA court from evaluating the merits of the additional claims, and if they were without merit, denying the *nunc pro tunc* relief **on that basis.**

2. We note *Miranda* was decided under the PCHA. *Hoyman* found it applied with equal force to the PCRA. *Hoyman*, 561 A.2d at 758.

3. *Commonwealth v. Sullivan*, 472 Pa. 129, 371 A.2d 468 (1977).

that will aid in the ultimate disposition of the claims. *See Commonwealth v. Marinez*, 777 A.2d 1121, 1125 (Pa.Super.2001) (using the PCRA court's evidentiary hearing and credibility determinations as part of the record to decide the case on direct appeal). This function of the PCRA court is more valuable than ever to a PCRA petitioner since the Supreme Court's decision in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002). *Grant* established a general rule postponing review of ineffective assistance of counsel claims until collateral review. In post-*Grant* practice, the following situation frequently arises: A PCRA petitioner seeks to have his or her direct appellate rights reinstated *nunc pro tunc*. The request is granted. On direct appeal the appellant raises, perhaps exclusively, claims of ineffective assistance of counsel. Those claims are dismissed without prejudice to raise them in collateral review. The appellant must then file another PCRA petition before these claims are disposed of on their merits. This practice is undoubtedly frustrating for petitioners whose "first" PCRA petition is successful, but who may not receive relief on some claims raised in that "first" petition until they go through the motions and reach the PCRA stage again.

¶ 6 If, however, a PCRA court follows the procedure outlined above and creates a record on the additional ineffectiveness claims a petitioner raises in the PCRA petition requesting reinstatement of direct appellate rights, that petitioner may be able to obtain review of those claims in the direct appeal, if one is granted. The Supreme Court carved out an exception to *Grant* in *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003), permitting review of ineffectiveness claims on direct appeal where a sufficient record concerning the claims had been established. Thus, ineffectiveness claims that were developed in the PCRA court may be reviewed in the *nunc pro tunc* direct appeal, along with any other appealable claims the appellant chooses to raise.

¶ 7 Turning to the case before us, the only appeal Appellant could properly present was the *nunc pro tunc* direct appeal granted to him by the PCRA court. The PCRA court's "disposition" of Appellant's additional ineffectiveness claim was essentially advisory. Although Appellant has captioned his appeal as one from the PCRA court's order, because the trial court heard argument on this issue, issued an opinion addressing it, and the parties have briefed it for this Court, we will treat the instant proceeding as a direct appeal and review the issue on its merits.

¶ 8 Appellant raises one issue: whether he should be granted a new trial where his trial counsel was ineffective for failing to present the testimony of Appellant's mother.

¶ 9 We are guided by the following standard in evaluating this claim.

> To prevail on a claim that counsel was constitutionally ineffective, the appellant must overcome the presumption of competence by showing that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different. A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim.

> . . .

> To prevail on a claim of ineffectiveness for failure to call a witness, the appellant must demonstrate that: (1) the witness

existed; (2) the witness was available; (3) trial counsel was informed of the existence of the witness or should have known of the witness' existence; (4) the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) the absence of the testimony prejudiced appellant.

*Commonwealth v. Malloy,* 856 A.2d 767, 781–82 (Pa.2004) (citations omitted).

¶ 10 Appellant's claim fails because he has failed to demonstrate that the absence of his mother's testimony prejudiced him. Appellant's convictions of aggravated assault, indecent assault, simple assault, endangering the welfare of children, and corruption of a minor stemmed from his digital penetration of his five-year-old niece's vagina: once at his home while his mother was babysitting her and once at the victim's house while Appellant babysat her. His mother's affidavit states she would have testified:

1. The inside doors had no locks on them.

2. The children were never alone in the house.

3. At times, there were as many as eight children in the house and with never a complaint.

Affidavit of Kay Miller, 11/26/02, at 2.

¶ 11 Appellant claims this testimony would have "rebutted" the victim's testimony. Appellant's Brief at 11. It would not have. First, the "house" to which the mother refers was not the only site of the incidents. Secondly, none of the proposed testimony contradicts the victim's testimony. She did not testify that the incidents occurred behind locked doors; she did not testify she was alone "in the house" at the time of either incident; and she did not testify that other children in the house complained. Appellant is entitled to no relief on this claim.

¶ 12 We note Appellant also argues his mother's testimony would have created reasonable doubt because she "was present in the house with the Appellant when he was looking after [the victim] and [s]he did not see these any [sic] of the alleged incidents occur." Appellant's Brief at 11. This statement is a bald mischaracterization of the witness's proposed testimony and we need not address this argument.

¶ 13 Judgment of sentence affirmed.