**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Manuel Jesus MARINEZ, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 5, 2001.

Filed May 16, 2001.

Frank C. Arcuri, York, for appellant.

Heather L. Adams, Asst. Dist. Atty., York, for Commonwealth, appellee.

Before CAVANAUGH, LALLY–GREEN, and TAMILIA, JJ.

LALLY–GREEN, J.:

¶ 1 Appellant, Manuel Jesus Marinez, appeals the judgment of sentence following his convictions for delivery of cocaine, conspiracy to deliver LSD, and conspiracy to commit possession of cocaine with intent to deliver. Appellant raises an ineffective assistance of counsel claim and challenges the legality of his sentence. We affirm.

¶ 2 The facts of the case are as follows. On April 4, 1997, at approximately 8:20 p.m., the Pennsylvania State Police executed a search warrant at 663 Linden Avenue in York County, Pennsylvania. N.T., 9/10–11/97, at 34–35, 121. Several detectives and members of the York City Police Department accompanied the State Police. *Id.* at 36. Brian Turner lived in the residence with Wade Bowen. *Id.* at 57, 125.

¶ 3 The officers saw Bowen on the front porch. *Id.* at 35. Bowen ran away from the residence, but was captured and returned to the scene. *Id.* The officers found a small bag of crack cocaine on the porch where Bowen had been standing. *Id.* at 38. Bowen stated that Appellant had delivered the crack cocaine to him shortly before the police arrived on the night in question. *Id.* at 121. Appellant was charged with delivery of cocaine with respect to these facts.

¶ 4 When Bowen was apprehended, he was found with LSD in his pants pocket. *Id.* at 38. This LSD was traced to Appellant as follows. On April 3, 1997, Bowen asked Appellant for LSD. *Id.* at 119–120. On the morning of April 4, 1997, Appellant arrived at the residence, but Bowen was not home. *Id.* at 173. Appellant gave the LSD to Turner instead. *Id.* Turner gave the LSD to Bowen later that morning. *Id.* at 120, 130. Bowen received two "hits" of LSD, and consumed one of the "hits" the day he received them. *Id.* at 129–130. Appellant was charged with conspiracy to commit delivery of LSD with respect to these facts.

¶ 5 As the police executed the search warrant in the residence, they apprehended Appellant in the doorway of the kitchen. *Id.* at 86. Police discovered a bag with 19 smaller packets of crack cocaine protruding from the top of a trashcan in the kitchen. *Id.* at 39, 88–89. The trashcan was within arm's reach of Appellant. *Id.* at 88. Bowen stated that Appellant brought the cocaine to the residence approximately 10 minutes before the police arrived. *Id.* at 121–122. Turner indicated that Appellant brought the cocaine to the residence so that Turner could sell it. *Id.* at 187. Appellant was charged with conspiracy to commit possession with intent to

deliver cocaine and possession with intent to deliver cocaine with respect to these facts.

¶ 6 The Commonwealth also established the following. Appellant had separate drug dealings with Turner and Bowen. *Id.* at 134. Turner had known Appellant for four or five years. *Id.* at 170. Appellant had supplied Turner with drugs every day for a month prior to the night in question, and "before that just on and off." *Id.* at 171. Bowen had known Appellant only for one week, and relied on a different dealer as his primary source of drugs. *Id.* at 128, 133.

¶ 7 At trial, Appellant was represented by Farley G. Holt, Esq. On September 11, 1997, a jury convicted Appellant of: (1) delivery of crack cocaine, with respect to the small amount of crack cocaine found on the porch; (2) conspiracy to commit delivery of LSD; and (3) conspiracy to commit possession with intent to deliver crack cocaine, with respect to the cocaine found in the trashcan. *Id.* at 332–333. Appellant was found not guilty of possession with intent to deliver cocaine with respect to the cocaine found in the trashcan. *Id.* at 332.

¶ 8 On November 24, 1997, Appellant was sentenced to a prison term of 16 to 32 months for delivery of cocaine, 6 to 12 months for conspiracy to commit delivery of LSD, and 20 to 40 months for conspiracy to commit possession with intent to deliver cocaine. N.T., 11/24/97, at 12. The aggregate sentence was 3½ to 7 years. *Id.*

¶ 9 Appellant did not file a direct appeal. On September 22, 1998, Appellant filed a Post Conviction Relief Act (PCRA) petition. Docket Entry 21. The court appointed Frank Arcuri, Esq., to represent Appellant. Docket Entry 23. The PCRA court held an evidentiary hearing on February 25, 1999.[1] Docket Entry 27. Appellant argued, *inter alia*, that: (1) trial counsel failed to communicate a plea offer from the Commonwealth;[2] and (2) trial counsel unjustifiably failed to file a direct appeal as requested. N.T., 2/25/99, at 6–10, 13.

¶ 10 As to the first issue, Attorney Holt testified that he did show Appellant a copy of the plea agreement and that Appellant "did not want to take the plea offer; he was willing to take his chances at trial." *Id.* at 21. *See also, id.* at 22 (counsel discussed the plea offer and its ramifications with Appellant, but Appellant rejected the offer because he "felt confident that he would succeed at trial"). The PCRA court, who presided over Appellant's trial, agreed with Attorney Holt. *Id.* at 36 ("My recollection is that there was a discussion of a plea agreement even before we started the trial. I think it was pretty clear he didn't want it"). *See also, id.* at 37 ("Again, my understanding was that he was not interested in pleading guilty. I mean, he had sort of a cocky attitude during the trial that he was going to win the case").

¶ 11 As to the second issue, it is undisputed that Attorney Holt did not file a direct appeal for Appellant. Attorney

---

1. The transcript of this evidentiary hearing is erroneously dated February 25, 2000. Docket Entry 27.

2. It is undisputed that a plea bargain existed; the only question is whether Attorney Holt communicated the offer to Appellant. At the PCRA hearing, Appellant implied that he would have accepted the plea bargain for sentencing purposes, even though he was not

at the residence to deliver drugs. N.T., 2/25/99, at 18 ("I would have just took it. I only had, like, a couple more months to do to finish out the year.") The PCRA court asked Appellant if he understood that the court would not let him plead guilty if he were not guilty of the offense. *Id.* at 18. Appellant nodded his head in response. *Id.*

Holt expressed a vague recollection that he may have discussed filing a direct appeal for Appellant. *Id.* at 35. The Commonwealth indicated that a direct appeal is a fundamental right which must be specifically waived. *Id.* at 38. The PCRA court indicated that it was inclined to grant Appellant a direct appeal *nunc pro tunc. Id.* at 38.

¶ 12 On December 1, 1999, the PCRA court granted a direct appeal *nunc pro tunc* and implicitly denied all other relief. Docket Entry 30. This direct appeal followed.

¶ 13 Appellant raises two issues on appeal:

I. Was trial counsel ineffective when he failed to inform the Appellant that the Commonwealth had offered a plea bargain prior to the commencement of trial?

II. Did the court impose an illegal sentence when it gave the appellant consecutive terms of imprisonment for the multiple inchoate crimes of criminal conspiracy to deliver cocaine and LSD?

Appellant's Brief at 4.

¶ 14 First, Appellant argues that trial counsel was ineffective for failing to communicate a plea bargain from the Commonwealth. No evidence in the certified record supports or refutes this claim, aside from the competing testimony of Appellant and Attorney Holt at the PCRA hearing.

To prevail on such a claim, Appellant must demonstrate that (1) the underlying claim is of arguable merit; (2) counsel's course of conduct was without a reasonable basis designed to effectuate his interest; and (3) that he was prejudiced by counsel's ineffectiveness, *i.e.* if

not for counsel's ineffectiveness, there is a reasonable probability that the outcome of the trial would have been different. *Commonwealth v. Douglas,* 537 Pa. 588, 597, 645 A.2d 226, 230 (1994).

*Commonwealth v. Mason,* 559 Pa. 500, 741 A.2d 708, 715 (1999), *cert. denied,* 531 U.S. 829, 121 S.Ct. 81, 148 L.Ed.2d 43 (2000).

¶ 15 Generally, counsel has a duty to communicate plea bargains to his client, as well as to explain the advantages and disadvantages of the offer. *Commonwealth v. Boyd,* 547 Pa. 111, 688 A.2d 1172, 1174 (1997). Failure to do so may be considered ineffectiveness of counsel if the defendant is sentenced to a longer prison term than the term he would have accepted under the plea bargain. *See, Commonwealth v. Korb,* 421 Pa.Super. 44, 617 A.2d 715, 716 (1992). Where the PCRA court's determination of credibility is supported by the record, we will not disturb it on appeal. *Commonwealth v. Harmon,* 738 A.2d 1023, 1025 (Pa.Super.1999), *appeal denied,* 562 Pa. 666, 753 A.2d 815 (2000).

¶ 16 The record reveals that Appellant's claim lacks arguable merit because counsel did communicate and explain the plea to Appellant. The PCRA court, which presided over Appellant's trial, held an evidentiary hearing on this claim. The court heard Appellant's testimony that he was not informed of a plea bargain. The court also heard Attorney Holt's testimony that he did in fact communicate the plea bargain. The PCRA court sided with Attorney Holt, and expressed its own opinion that Appellant rejected a pre-trial plea bargain. N.T., 2/25/99, at 36–37. On appeal, Appellant cites to no evidence aside from his own PCRA testimony, which the PCRA court disbelieved. Under these circumstances, it would be a fruitless exercise to remand for another evidentiary hear-

ing.[3] The PCRA court has decided this credibility issue in favor of Attorney Holt. Appellant's first claim fails.

■ ¶ 17 Appellant next argues that his sentence was illegal. Specifically, Appellant argues that his separate convictions for conspiracy to deliver LSD and conspiracy to possess cocaine with intent to deliver should have been treated as a single conspiracy for sentencing purposes.

¶ 18 Our Supreme Court recently addressed this issue in *Commonwealth v. Andrews*, 564 Pa. 321, 768 A.2d 309 (2001). In that case, defendant Andrews and an accomplice robbed two different apartment building offices within three hours on the same day. *Id.* at 310. The Commonwealth successfully petitioned for the two robberies to be merged for trial in light of evidence tending to establish a *modus operandi.* *Id.* at 310. Andrews was convicted of two counts of criminal conspiracy, and was sentenced separately for each count. *See, id.* at 310–11.[4]

¶ 19 On appeal, Andrews argued that the two conspiracy convictions should have merged for sentencing purposes. *See, id.* at 311. This Court treated Andrews' claim as one that implicated the legality of the sentence. *Id.* at 311. This Court affirmed, reasoning that separate sentencing was permissible because the robberies "did not constitute an overlapping common scheme" and because "the charges involved separate robberies of different individuals at different locations." *Id.* at 312.

¶ 20 Our Supreme Court affirmed. The Court first noted that Pennsylvania jurisprudence appears to be split as to whether a claim such as the claim of Andrews should be treated as a challenge to the legality of the sentence or a challenge to the sufficiency of the evidence. *Id.* at 311–12. The Court held that the issue should be treated as a challenge to the sufficiency of the evidence because: (1) the claim centers on the fact-based question of whether the robberies were the product of one agreement or multiple agreements; (2) "merger applies only in the context of greater and lesser included offenses, and the present issue concerns proof of separate offenses, neither of which is a constituent of the other"; and (3) the statute governing a single conspiracy with multiple objectives, 18 Pa.C.S.A. § 903(c), "implicates a factual assessment of either the conspiratorial agreement or the relationship of the conspirators." *Id.* at 311–13. The Court addressed Andrews' claim on the merits, even though he couched it in terms of the legality of the sentence, because "existing precedent supported the manner in which Andrews raised the claim". *Id.* at 315.

¶ 21 The *Andrews* Court concluded that the record was sufficient to establish two separate conspiracies because the crimes

**3.** Appellant argues that the PCRA court's factual findings are "null and void" because the court granted a direct appeal *nunc pro tunc.* Appellant's Brief at 9, *citing, Commonwealth v. Pate,* 421 Pa.Super. 122, 617 A.2d 754 (1992), *appeal denied,* 535 Pa. 656, 634 A.2d 219 (1993). We disagree. In *Pate,* the PCRA court granted a direct appeal *nunc pro tunc* but also improperly decided the merits of a substantive ineffectiveness claim. *Pate,* 617 A.2d at 758. This Court held that the PCRA court's order was a "nullity" insofar as it purported to dispose of the merits of Pate's claims. *Id.* On the other hand, this Court

used the PCRA court's evidentiary hearing and review to "serve the evidentiary purpose of completing the record for appellate review." *Id.* at 759 (emphasis added). Such is the case here. We will use the PCRA court's evidentiary hearing and credibility determinations as part of the record to decide the case on direct appeal.

**4.** Andrews was also found guilty of two counts of possessing an instrument of crime, and five counts of robbery. *Id.* at 310–11.

"involved different victims, were carried out at different apartment buildings, in different parts of the city, and were separated by three hours." *Id.* at 316. The Court also noted that the two robberies were not interdependent, such that the earlier offense was a "necessary intermediate step" for the later offense. *Id.* The Court noted but ultimately dismissed facts tending to show one continuing conspiracy to rob apartment buildings; for example, Andrews committed both crimes with the same accomplice, using the same general method, within a short span of time. *Id.;* compare, *Commonwealth v. Davis,* 704 A.2d 650, 654–655 (Pa.Super.1997) (where defendant and his accomplices attacked and killed the victim in the course of a robbery, defendant could not be sentenced separately for conspiracy to commit robbery and conspiracy to commit third degree murder).

¶ 22 In keeping with *Andrews,* we will address the merits of Appellant's claim as a challenge to the sufficiency of the evidence. Our standard of review is well settled.

> "The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Heberling,* 451 Pa.Super. 119, 678 A.2d 794, 795 (Pa.Super.1996) (citing *Commonwealth v. Williams,* 539 Pa. 61, 650 A.2d 420 (1994)). In applying [the above] test, we may not weigh the evidence and substitute our judgment for that of the factfinder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder un-

less the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *Commonwealth v. Cassidy,* 447 Pa.Super. 192, 668 A.2d 1143, 1144 (Pa.Super.1995) (citations omitted). The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *Commonwealth v. Valette,* 531 Pa. 384, 388, 613 A.2d 548, 549 (1992) (citations and quotation marks omitted).

*Commonwealth v. Vetrini,* 734 A.2d 404, 406–407 (Pa.Super.1999).

¶ 23 "Criminal conspiracy requires proof of intent to promote or facilitate a crime, agreement to commit or aid in the commission of an unlawful act, and an overt act in furtherance thereof." *Andrews, supra,* at 311, *citing,* 18 Pa.C.S.A. § 903(a), (e). A person who conspires to commit multiple crimes may do so in one of two ways: (1) by entering into a single, overarching conspiracy to commit multiple crimes; or (2) by entering into separate conspiracies to commit each crime. The first scenario is governed by 18 Pa.C.S.A. § 903(c), which states:

**Conspiracy with multiple criminal objectives.**—If a person conspires to commit a number of crimes, he is guilty of only one conspiracy as long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship.

18 Pa.C.S.A. § 903(c); *Andrews, supra,* at 314.

¶ 24 We have defined a single conspiracy under Section 903(c) as follows:

A single, continuing conspiracy is demonstrated where the evidence proves that the essential feature of the existing conspiracy was a common plan or scheme to achieve a common, single, comprehensive goal.... A single, continuing conspiracy may contemplate a series of offenses, or be comprised of a series of steps in the formation of a larger, general conspiracy.... Therefore, where the evidence at trial is sufficient for the jury to infer that the essential features of the existing conspiracy were a common plan or scheme to achieve a common, single, comprehensive goal or end, then the conclusion that the conspiracy was a single, continuing conspiracy is justified.

*Commonwealth v. Troop,* 391 Pa.Super. 613, 571 A.2d 1084, 1089–1090 (1990), *appeal denied,* 526 Pa. 634, 584 A.2d 317 (1990). Similarly, in *Andrews,* our Supreme Court held that the issue may be resolved by deciding whether the multiple crimes "resulted from a continuous conspiratorial relationship." *Andrews, supra,* at 316 (quotation marks omitted). Our courts use a multi-factor test to distinguish single conspiracies from multiple conspiracies, focusing on the following elements:

The number of overt acts in common; the overlap of personnel; the time period during which the alleged acts took place; the similarity in methods of operation; the location in which the alleged acts took place; the extent to which the purported conspiracies share a common objective; and the degree to which in-

terdependence is needed for the overall operation to succeed.

*Id., citing, Commonwealth v. Koehler,* 558 Pa. 334, 737 A.2d 225, 245 (1999), *cert. denied,* 531 U.S. 829, 121 S.Ct. 79, 148 L.Ed.2d 41 (2000). When conducting this analysis, we must bear in mind that "it is not an appellate court's function to reweigh the evidence and substitute its judgment for that of the jury." *Id.* at 317. Rather, we must construe all of the facts and inferences in the light most favorable to the Commonwealth. *Id.* at 314.

¶ 25 With these principles in mind, we conclude that there is adequate support in the record for the jury's conclusion that Appellant entered into two separate conspiracies: one for delivery of a small quantity of LSD, and one for possession with intent to deliver a large quantity of cocaine. First, there are no overt acts in common between the LSD transaction and the cocaine transaction. In the LSD transaction, Bowen called Appellant on April 3, 1997, and asked for the drug. Appellant delivered the LSD on the morning of April 4, 1997. In the cocaine transaction, Appellant delivered a large quantity of cocaine to the residence in the evening. Second, the personnel do not significantly overlap. The LSD was received by Bowen,[5] while the large package of cocaine was intended for Turner to sell. Third, the two transactions are separated by a span of at least eight hours. Fourth, the two conspiracies did not share a common objective. Appellant delivered a small quantity of LSD to Bowen for his personal use, and delivered a large quantity of cocaine to Turner for resale. Fifth, there is no interdependence between the two transactions because one is not an intermediate step toward the com-

---

**5.** While Turner did initially receive the LSD, it is apparent from the record that Bowen would have received it himself but for the fact that he was not home at the time.

pletion of the other.[6] When viewing the record as a whole and in the light most favorable to the Commonwealth, the evidence was sufficient to establish two separate conspiracies rather than one single, comprehensive conspiracy with a single common goal. Appellant's second claim fails.

¶ 26 Judgment of sentence affirmed.

**6.** It is true that the transactions share a similar method of operation and the same location.