## Commonwealth v. Serrano

*Craig Stedman,* for Commonwealth.
*Michael Marinaro,* for defendant.

KNISELY, *J.,* June 26, 2009—Defendant Angel Roberto Serrano has appealed his judgment of sentence to the Superior Court of Pennsylvania. This opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules

of Appellate Procedure. In his appeal, appellant raises sufficiency and weight of the evidence arguments.

## BACKGROUND

On January 4, 2007, appellant Serrano and Brandon McPherson armed themselves and went to the corner of Beaver Street and West Andrew Street, downtown Lancaster, where they opened fire on a group of males. Serrano and McPherson were battling with the males over drug-dealing territory. B.P., a 7-year-old girl, was walking home with her mother and two cousins across the street when appellant and McPherson opened fire on the males. B.P. was struck by a bullet in her back. Appellant and McPherson fled the scene of the shooting.

B.P. was taken to the hospital. The EMT kept her alive on the way by sticking his finger in her back to stop the bleeding. N.T. trial, 11/4/08, at 234. At the hospital, she went into cardiac arrest. *Id.* Bone fragments and travel of the bullet caused injuries to her ribs, lung and heart. *Id.* at 611. At one point, they had to shock her heart to get it beating again. *Id.* She came very close to dying, but the efforts of her doctors and medical staff saved her life. *Id.* at 613.

From the shooting scene, appellant and McPherson went to the house of McPherson's friend. They changed clothes and caught a cab with their respective girlfriends, Brittney and Sheena, and another male, to a motel. The five of them then went to the house of Sheena's mother. Upon returning to Lancaster, appellant sought money from his stepfather. His stepfather, reasoning that appellant would violate his probation if he left the state, refused

to give him money. Appellant fled to Florida where he stayed with another girlfriend, Nicole.

While in Florida, appellant remained in contact with various girlfriends in Lancaster, his sister, and his stepfather. He warned his stepfather to be careful when testifying. He also wrote his sister telling her to be nice to the girls to secure his alibi. The letters to his sister and Brittney told them what to say regarding the shooting. Appellant also asked Brittney for money which she sent him several times during his time in Florida.

On February 14, 2007, appellant was arrested in Florida. Formal charges were filed against appellant and McPherson on March 12, 2007. On September 24, 2007, appellant was extradited from Florida. While in prison, appellant continued to manipulate his girlfriends as part of his "power move," N.T. trial, 11/6/08, at 1029, to establish an alibi. Calling them "two fat girls in love," *id.,* he told them each he was not dating the other.

Appellant was charged under Information 96-2008 with attempted murder,[1] conspiracy to commit murder,[2] aggravated assault,[3] conspiracy to commit aggravated assault,[4] and two counts of recklessly endangering another person.[5] On November 14, 2008, a jury found appellant guilty of criminal conspiracy to commit murder, criminal conspiracy to commit aggravated assault, and recklessly endangering another person. The court ordered

---

1. 18 Pa.C.S. §901(a).
2. 18 Pa.C.S. §903(a)(1)(2).
3. 18 P.S. §2702(a)(1)(4).
4. 18 Pa.C.S. §903(a)(1)(2).
5. 18 P.S. §2705.

a pre-sentence investigation. On March 23, 2009, this court sentenced appellant to 20 to 40 years in a state correctional institute for criminal conspiracy to commit murder, five to 10 years for criminal conspiracy to commit aggravated assault, and one to two years on each count of reckless endangerment. All counts were consecutive; thus, the aggregate term is 27 to 50 years of state imprisonment.

On April 1, 2009, appellant filed a petition to modify sentence which was denied by this court's April 2, 2009 order. This appeal followed.

## DISCUSSION

Appellant claims there was insufficient evidence to establish his guilt beyond a reasonable doubt on the charges of conspiracy to commit murder, conspiracy to commit aggravated assault, and recklessly endangering another person.

The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner and drawing all proper inferences favorable to the Commonwealth, the fact-finder could reasonably have determined all the elements of the crime to have been established beyond a reasonable doubt. *Commonwealth v. Oliver,* 693 A.2d 1342, 1344 (Pa. Super. 1997).

A person is guilty of criminal conspiracy if he, with another person, (1) intends to promote or facilitate the commission of a crime, and (2) agrees with the other person that one or more of them will engage in conduct constituting the crime or attempting or soliciting to com-

mit such crime. 18 Pa.C.S. §903(a). An agreement may be inferred from the acts and circumstances of the parties. *Commonwealth v. Ripley,* 833 A.2d 155, 160 (Pa. Super. 2003). Moreover, a conspiracy conviction requires an overt act done in furtherance of the conspiracy. 18 Pa.C.S. §903(e). The sufficiency of evidence to sustain a conviction of conspiracy is not affected by the fact that defendants are acquitted on the substantive charges. *Commonwealth v. Wanamaker,* 298 Pa. Super. 283, 288, 444 A.2d 1176, 1178 (1982) (citing *Commonwealth v. Rosen,* 141 Pa. Super. 272, 14 A.2d 833 (1940)).

Here, the Commonwealth presented ample evidence that appellant conspired with McPherson to kill the males on the corner. Witnesses testified that appellant and McPherson were upset prior to the shooting. N.T. trial at 247, 343, 346. McPherson felt disrespected, *id.* at 247, and told his girlfriend that he was going to shoot the guy on Beaver Street. *Id.* at 346. Appellant and McPherson left the house in downtown Lancaster together. *Id.* at 343, 448. Witnesses back at the house testified to hearing gunshots shortly after appellant and McPherson left. *Id.* at 259, 350, 452. Before the shots, McPherson's girlfriend remained at the house. She called McPherson's cell phone. *Id.* at 351. Another male at the house took the phone and asked, "What's taking so long, are you gonna make it rain." *Id.*

Witnesses testified that McPherson and appellant returned to the house out of breath and excited. *Id.* at 249-50, 352, 452-53. They were each seen with different guns. *Id.* at 262-63, 274-75, 340, 355, 453. They changed clothes. *Id.* at 350, 454. Appellant told a witness. "I think we clapped them niggas." *Id.* at 371. They took a cab to

a motel where appellant admitted that both he and McPherson shot at a guy. *Id.* at 460-61. Appellant sought money and fled to Florida to "get out of dodge." *Id.* at 529. A silver revolver fitting the description given by witnesses of a gun they saw the defendants with was recovered. *Id.* at 763-65. The same gun was matched to bullets recovered from the scene. *Id.* at 803-806. Only one gun was recovered when appellant was interviewed by a Lancaster detective in Florida, but during the interview appellant asked if the detective had any gun*s* in custody. *Id.* at 1020. (emphasis added)

Although only one of the guns described at trial was recovered, the circumstances surrounding the shooting revealed an unlawful agreement. *Commonwealth v. Lawson,* 437 Pa. Super. 521, 530, 650 A.2d 876, 880 (1994) (criminal conspiracy inferentially established by showing the relationship, conduct, or circumstances of the parties). The jury was free to infer from the witness' testimony that appellant and McPherson agreed to kill, intended to kill, armed themselves and opened fire on a public street in furtherance of their conspiracy.[6]

Appellant also challenges the sufficiency of evidence to support the guilty verdict on the conspiracy to commit aggravated assault charge. Although there is more than sufficient evidence to establish the elements of this count, this court, in preparing its 1925 opinion, recognized that the criminal information and record reveal a single con-

---

6. Of note, although the guilty verdicts of conspiracy to commit murder and not guilty of attempted murder may be inconsistent, the inconsistency does not constitute grounds for reversal. *Commonwealth v. Carter,* 444 Pa. 405, 408, 282 A.2d 375, 376 (1971) ("consistency in a verdict in a criminal case is not necessary").

spiracy to kill rather than two separate conspiracies. The two conspiracy counts on the information list nearly identical facts. Further, the record as discussed above supports a finding of one single, continuing conspiracy with a common scheme to kill the rival males on the corner. Although not raised by defense counsel, this court improperly imposed a sentence on this count as a second, separate offense. Such a sentence is not permissible under 18 Pa.C.S. §906 (barring multiple convictions of inchoate crimes). The court acknowledges that the appropriate correction must be made based on *Commonwealth v. Andrews,* 564 Pa. 321, 331, 768 A.2d 309, 314 (2001) (noting person conspiring to commit multiple crimes with single objective is guilty of only one conspiracy), and *Commonwealth v. Marinez,* 777 A.2d 1121, 1126-27 (Pa. Super. 2001) (requiring sentence imposed on conspiracy to commit aggravated assault be vacated).

Appellant was also convicted of recklessly endangering another person (REAP). REAP is defined at 18 Pa.C.S. §2705:

*"Section 2705. Recklessly endangering another person*

"A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."

The Commonwealth was required to show that appellant (1) possessed a mens rea recklessness, (2) acted ("actus reas"), and (3) as a result of his action, created the danger to another person of death or serious bodily

injury. *Commonwealth v. Reynolds,* 835 A.2d 720, 727 (Pa. Super. 2003). "Serious bodily injury" is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." *Commonwealth v. Klein,* 795 A.2d 424, 427 (Pa. Super. 2002) (citing *Commonwealth v. Hopkins,* 747 A.2d 910, 915-16 (Pa. Super. 2000)). The Commonwealth must demonstrate that the defendant had an "actual present ability to inflict harm." *Id.*

Here, appellant along with McPherson opened fire on a public street, in the early evening hours, at a group of males while other innocent bystanders were walking down the street. One bullet struck and nearly killed B.P. The Commonwealth provided ample evidence that appellant's wrongful, violent conduct did place B.P. and her mother at risk of death or serious bodily injury.

Finally, appellant contends the guilty verdicts of attempted murder, conspiracy to commit murder, conspiracy to commit aggravated assault, and reckless endangerment were against the weight of the evidence.

The weight of the evidence is exclusively for the fact-finder who is free to believe all, part, or none of the evidence and to determine the credibility of witnesses. *Commonwealth v. Champney,* 574 Pa. 435, 443, 832 A.2d 403, 408 (2003). An appellate court will only reverse a trial court's verdict where it is so contrary to the evidence that it shocks the conscience. *Id.*

The evidence at trial established appellant's conspiracy and reckless endangerment of B.P. and her mother. Three separate people who saw appellant shortly before

and after the shooting testified to appellant's active and willing participation. N.T. trial at 255-56, 346-47, 352-53, 359, 450-51, 453. Ballistics testing connected the gun appellant was seen with to the bullets recovered from the shooting. *Id.* at 802-804. Letters and tape-recorded conversations revealed appellant's attempt to fabricate an alibi for the day of the shooting by manipulating four women, his sister, a girlfriend in Florida, and two girlfriends in Pennsylvania. *Id.* at 877, 884, 985-96, 1029. B.P.'s mother testified to running when she heard shots and to realizing her daughter was shot. *Id.* at 185-86. An EMT and doctor testified to B.P.'s condition and the seriousness of her injuries. *Id.* at 232-34, 608-13. The jury was free to believe all, part or none of this evidence presented during the trial. Therefore, the jury's guilty verdict was not against the weight of the evidence.

For the foregoing reasons, the court respectfully submits that appellant's judgment of sentence for one count of conspiracy to commit murder and two counts of reckless endangerment should be affirmed.