J-S32037-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SYHEED WILSON | : | |
| | : | |
| Appellant | : | No. 229 EDA 2020 |

Appeal from the PCRA Order Entered December 6, 2019,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0003754-2016.

BEFORE: KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:          **FILED DECEMBER 22, 2020**

Syheed Wilson appeals from the order denying his first petition for relief pursuant to the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A. §§9541-9546. We affirm.

The pertinent facts and procedural history are as follows: On February 6, 2016, at approximately 3:30 a.m., the victim was driving a taxicab he owned near 13th and Tasker Streets in Philadelphia when he was flagged down by a group of three people, Wilson, Michael Jones, and Kierston Carroll. When the victim stopped his cab, Jones got in the front seat while Wilson and Carroll got into the back seat. Jones then instructed the victim to drive the group to 28th and Tasker Streets.

---

[*] Retired Senior Judge assigned to the Superior Court.

When the taxi approached the destination, Jones directed the victim to turn onto 28th Street, and then Marston Street. Once on Marston Street, Jones told the victim, "Don't move," while pointing a gun at the victim's head. The victim did not stop the taxi, however, and Jones placed his gun to the victim's forehead and pulled the trigger. Because the victim had jerked his head, the bullet only grazed his head. Jones fired his weapon a second time at the victim before leaping out of the taxi. The victim suffered gunshot wounds near his forehead and ear.

Once Jones exited the car, from the back seat Wilson demanded that the victim stop the car while grabbing his arm through the open security window which separated the front and back of the taxi. Instead of stopping, the victim kept driving. Wilson then shot the victim from the back seat, striking him in the arm and chest.

As a result of Wilson grabbing and shooting the victim, the taxi struck parked cars on Morris Street. The victim managed to pull his arm away from Wilson, exited the taxi, and ran away from the scene. Wilson and Carroll remained locked in the back seat unable to get out.

Philadelphia Police Officer David Harrison was approaching a nearby intersection when the victim stopped him. The victim reported that he had just been shot by two men and a girl. Upon seeing blood on the victim's head

and realizing he was wounded, Officer Harrison took the victim to the hospital.[1]

Meanwhile, at the scene of the car accident, Bonnie Wollard was inside her nearby home on Morris Street when her son woke her up and informed her that he had heard a loud noise. They both then went outside and saw a taxi cab in the middle of the block, rocking back and forth. She heard the occupants inside the taxi repeating, "Let us out, let us out." Ms. Wollard instead notified her neighbors whose cars had been struck. Upon returning to the taxi, she found Wilson and Carroll outside the taxi because they were let out by another bystander. Ms. Wollard asked the pair whether they had been involved in the accident. According to Ms. Wollard, Carroll shrugged, shoved Wilson, and said, "Come on, let's go, no." Wilson replied, "Yeah, we were involved. He hit y'all cars, he hit y'all cars on purpose." Wilson and Carroll then walked away quickly, ignoring Ms. Wollard's request that they remain at the scene as witnesses.

Following their investigation, the police executed a search warrant at Wilson's house. They found Carroll at the home and arrested her. The police

_____

[1] The victim remained in the hospital as a result of his gunshot wounds. He also suffered a concussion and head trauma. One of the gunshot wounds perforated his arm and entered his rib cage. At the time of trial, a bullet remained lodged there, and the victim continued to suffer from limited mobility in his right arm.

also recovered the jacket that Carroll could be seen wearing in the surveillance video.[2]

Following grand jury proceedings, Wilson was indicted on attempted murder, criminal conspiracy, aggravated assault, robbery and related charges. Trial was originally scheduled for September 26, 2016. Prior to trial, the Commonwealth extended a negotiated plea offer of five to ten years of incarceration followed by a five-year probationary term. Wilson decided to reject the offer. The next day, trial counsel conducted an on-the-record colloquy to confirm that his rejection of the plea offer was knowing, intelligent, and voluntary. During the plea colloquy, Wilson confirmed that his decision was freely made without coercion or promises made to him. The trial court accepted Wilson's rejection of the Commonwealth's plea offer as knowing, intelligent and voluntary. N.T., 12/27/16, at 6.

Beginning on October 25, 2016, a joint jury trial began against Wilson, Jones, and Carroll. On October 31, 2016, the jury convicted Wilson of attempted murder, criminal conspiracy, aggravated assault, robbery, and possessing a firearm without a license. On February 28, 2017, the trial court imposed an aggregate term of seventeen to forty years of imprisonment, followed by a five-year probationary term. Wilson's post-sentence motion was

_____

[2] Police unsuccessfully attempted to arrest Jones at his home in Philadelphia. Thereafter, the authorities learned that he had fled to his father's home in New Jersey, and his surrender to police was negotiated shortly thereafter.

denied by operation of law. Although Wilson initially filed an appeal to this Court, he later withdrew it.

Wilson filed a timely *pro se* PCRA petition on September 28, 2018, and the PCRA court appointed current counsel. Counsel filed an amended petition on January 24, 2019, in which Wilson raised the sole claim that his trial counsel was ineffective when advising him regarding the Commonwealth's plea offer. The PCRA court held an evidentiary hearing on July 9, 2019. Both Wilson and trial counsel testified with regard to their discussions prior to Wilson's rejection of the plea offer, and the PCRA court asked the parties to file proposed findings of fact and conclusions of law. On December 6, 2019, the PCRA court convened a hearing at which it presented its factual findings and legal conclusions. Determining that trial counsel had provided constitutionally adequate representation in relation to the Commonwealth's plea offer, the PCRA court denied Wilson's amended PCRA petition. This timely appeal followed. The PCRA court did not require Pa.R.A.P. 1925 compliance.[3]

Wilson raises the following issue:

1. Whether the [PCRA] court erred when it found [Wilson's] trial counsel was not ineffective when he failed to properly advise [Wilson] such that his plea of guilty was not entered knowingly or intelligently?

Wilson's Brief at 4.

_____

[3] The Honorable Benjamin J. Lerner presided at the PCRA hearing, but retired shortly after Wilson took this appeal. The appeal was forward to this Court without an opinion.

Our standard of review is as follows:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

When a petitioner alleges trial counsel's ineffectiveness in a PCRA petition, he must prove by a preponderance of the evidence that his conviction or sentence resulted from ineffective assistance of counsel "which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). Additionally, the petitioner must demonstrate:

> (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the

> outcome of the proceedings would have been different but for counsel's action or inaction. Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness[,] the petitioner must advance sufficient evidence to overcome this presumption.

*Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016) (internal citations and quotation marks omitted). *Strickland v. Washington*, 466 U.S. 668 (1984) (accord). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).

Wilson claims that trial counsel was ineffective when advising him regarding the Commonwealth's plea offer. Specifically, Wilson contends that his "decision to plead not guilty and go to trial was not a fully informed one because trial counsel did not communicate the risks of trial or the merits of the offer and provided no insight as to whether he should or shoudn't go trial." Wilson's Brief at 10. According to Wilson, trial counsel did not provide [him "with the benefit of his professional advice when [he] made the crucial decision to go to trial." Wilson's Brief at 10. Finally, Wilson contends that trial counsel's ineffectiveness "caused prejudice such that he was convicted at trial and received a harsher sentence then he would have had he been effectively advised." *Id.* We cannot agree.

"Generally, counsel has a duty to communicate plea bargains to his client, as well as to explain the advantages and disadvantages of the offer." *Commonwealth v. Marinez*, 777 A.2d 1121, 1124 (Pa. Super. 2001). Stated differently, counsel has a duty to explain to the defendant "the relative

merits of the offer compared to the defendant's chances at trial."
*Commonwealth v. Napper*, 385 A.2d 521, 521 (Pa. Super. 1978). "Failure to do so may be considered ineffective assistance of counsel if sentenced to a longer prison term that the term he would have accepted under the plea bargain." *Marinez*, 777 A.2d at 1124. Thus, a defendant seeking relief based on a claim that ineffective assistance of counsel caused him to reject a plea offer must show that:

> [B]ut for the ineffective assistance of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Commonwealth v. Steckley*, 128 A.3d 826, 832 (Pa. Super. 2015) (citing *Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012)).

Applying the above standards, the PCRA court concluded that Wilson had failed to meet his burden. The PCRA court summarized its factual findings and legal conclusions on the record as follows:

> **THE COURT:** All right. I find that [Wilson] has not met his burden of demonstrating that the representation provided to him was ineffective in any respect, and specifically in terms of the advice that counsel provided to [Wilson] regarding the choice [Wilson] had as to either accepting the plea or going to trial.
>
> I accept as credible counsel's testimony that he (a) reviewed with the client the relevant material that would be necessary to have this discussion, specifically - - and not

limiting this to these two items, but specifically the PARS and the discovery.

I find also that in his discussion of the pros and cons, the strengths and weaknesses of the Commonwealth's case that [plea counsel] did specifically offer his opinion and strong recommendation to [Wilson] as to what was - - what choice was in [Wilson's] best interest. Mr. Wilson rejected that advice, as he has an absolute right to do, and chose to go to trial. The results of the trial are a matter of record.

The PCRA petition is dismissed.

N.T., 12/6/19, at 12-13.

When "the PCRA court's determination of credibility is supported by the record, we will not disturb it on appeal." *Marinez*, 777 A.2d at 1124 (citation omitted). At the PCRA hearing, Wilson and trial counsel presented conflicting accounts of their discussions prior to Wilson's on-the-record colloquy in which he rejected the offer. The PCRA court expressly credited trial counsel's version of the contested facts. Given this credibility determination, our review of the PCRA hearing testimony supports the PCRA court's conclusions that the advice trial counsel gave Wilson was constitutionally adequate. In arguing to the contrary, Wilson cites to certain portions of trial counsel's PCRA hearing testimony without context, and relies on his own testimony, which the PCRA court expressly found unworthy of belief. *See* N.T., 12/6/19, at 9.

In sum, because the PCRA court's credibility determinations are supported by the record, *Marinez*, *supra*, we affirm the PCRA court's order denying Wilson post-conviction relief.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/2020