J-S29022-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ISIAH MITCHELL | : | |
| | : | |
| Appellant | : | No. 1714 EDA 2020 |

Appeal from the PCRA Order Entered August 21, 2020,
in the Court of Common Pleas of Montgomery County,
Criminal Division at No(s):  CP-46-CR-0002115-2018.

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:         **FILED NOVEMBER 16, 2021**

Isiah Mitchell appeals from the order denying his first petition for relief

pursuant to the Post Conviction Relief Act ("PCRA").  42 Pa.C.S.A. §§ 9541-

9546.  We affirm.

The PCRA court summarized in detail the pertinent facts as follows:

> Around mid-February 2018, the Norristown Police
> Department received [citizen] complaints regarding drug
> activity occurring at 634 Sandy Street in Norristown, PA.
> These [citizen] complaints reported someone by the name
> of "Isiah" was the person responsible for this drug activity.
>
> In response to the [citizen] complaints, Officer Carl
> Robinson of the Norristown Police Department began
> conducting surveillance on the 600 block of Sandy Street.
> One of these operations occurred on February 19, 2018.
> During these surveillance operations, Officer Robinson
> observed [Mitchell] engaging in actions which were

---

[*] Former Justice specially assigned to the Superior Court.

"consistent with drug activity", including [Mitchell] briefly getting into the passenger side of vehicles which drove up to this block. During one of the surveillance operations, Officer Robinson observed [Mitchell] wearing a red hooded sweatshirt with a white draw string.

On March 2, 2018, a concerned citizen sent the Norristown Police a Facebook Live social media video, dated March 1, in which [Mitchell] is [waving] a silver and black handgun while arguing with his child's mother. Sometime prior to his preparation of an affidavit for a search warrant, Officer Robinson observed the Facebook Live social media video featuring [Mitchell].

On March 5, 2018, at 3:58 p.m., police were dispatched to the area of the 600 block of Sandy Street due to a report of shots fired. During the course of the investigation, authorities discovered eight (8) shots had been fired at an occupied vehicle. Authorities also located eight (8) .40 caliber Smith [&] Wesson [s]hell casings on Piazza Street just behind the yard of 660 Sandy Street, which is three (3) houses away from 634 Sandy Street.

As part of their investigation, authorities recovered video from camera locations approximately half a block away from the crime scene. In one video, [Mitchell] is seen wearing a red hooded sweatshirt at 1:12 p.m. while walking on Sandy Street. At 3:55 p.m., a silver Mitsubishi, later confirmed to be operated by [Mitchell's] mother, is seen driving on streets adjacent to Sandy Street and on Sandy Street itself. An unknown subject wearing a red sweatshirt is seen sitting in the front passenger seat. At 3:56 p.m., a video shows the Mitsubishi proceeding at a high rate of speed on Sandy Street to an adjacent street. Again, the vehicle is being driven by [Mitchell's] mother and the unknown subject wearing a red sweatshirt is still sitting in the front passenger seat. At 3:57 p.m., a video shows the Mitsubishi traveling at a high rate of speed and turning east on Sandy Street. [Mitchell's] mother is still operating the vehicle but the unknown subject in the red sweatshirt is no longer sitting in the front passenger seat. In later testimony, Officer Robinson stated that he believed the shooting occurred between 3:50 p.m. and 4:00 p.m.

On March 6, 2018, authorities applied for a search warrant for 634 Sandy Street and [Mitchell's] person. In his affidavit of probable cause for the issuance of a search warrant, Officer Robinson averred that the weapon he observed [Mitchell] holding in the Facebook Live video was consistent with a weapon which would be capable of shooting a .40 caliber projectile. On the application page, authorities identified the items to be searched for and seized as a semi-automatic .40 caliber handgun, .40 caliber ammunition and a red sweatshirt. On March 6, 2018, a magisterial district judge approved the warrant.

Following their procurement of the warrant, authorities conducted surveillance of 634 Sandy Street. During surveillance, Officer Robinson observed [Mitchell] exit the residence and get into a white vehicle. As the officer was approaching the vehicle, he observed [Mitchell] bend down with his right shoulder towards the floor of the vehicle. Officer Robinson subsequently removed [Mitchell] from the vehicle and clearly saw, in plain view, the barrel of a handgun on the floor. Upon retrieval, the officer was able to confirm that it was a silver and black handgun. Officer Robinson later testified that this handgun "looked exactly the same" as the one in the Facebook Live video.

When authorities searched [Mitchell] following his arrest, they discovered marijuana on his person. During a search of 634 Sandy Street authorities recovered, *inter alia*, two (2) large bags containing marijuana, a clear zip lock bag containing a large amount of "Sativa" THS vaporizer refills, a large amount of clear packaging, three (3) brass Smith & Wesson .40 caliber handgun rounds and a total of $4,495 in US [c]urrency.

PCRA Court Opinion, 1/22/21, at 1-3 (paragraph breaks added).

Following his arrest, Mitchell retained counsel. The PCRA summarized

the subsequent pretrial proceedings as follows:

On April 30, 2018, [Mitchell] filed an Omnibus Pre-Trial Motion which included a Motion to Suppress. On September 20, 2018, [Mitchell] filed a Motion to Compel Discovery requesting, *inter alia*, copies of the [citizen] complaints,

reports concerning surveillance of [him] and the Facebook Live video which authorities referenced in their search warrant application.

During oral argument with respect to the Motion to Compel, the Commonwealth represented that (1) they did not possess the Facebook Live video, (2) there were no documents memorializing the citizen complaints and (3) any reports relating to surveillance of [Mitchell] had already been produced. The court denied the Motion to Compel on December 18, 2018, but in its Order directed that in the event the Commonwealth was to come into possession of any of these materials, it was directed to produce them to [Mitchell] within forty-eight (48) hours.

The court scheduled a suppression hearing for March 14, 2019. On March 11, 2019, [Mitchell] filed a Motion to Suppress the Search Warrant Based Upon Material Misrepresentations and Non-Corroborating Evidence. The court informed the parties that both suppression motions would be heard on March 14, 2019. In the time leading up to the suppression hearing, the Commonwealth presented a plea offer of five (5) to twelve (12) years of imprisonment which it indicated would be withdrawn if [Mitchell] proceeded with the suppression hearing.

On March 13, 2019, one (1) day prior to the scheduled suppression hearing, the Commonwealth came into possession of additional e-mail communications from the Norristown Police Department which contained some references to citizen complaints and screen shots of the Facebook Live video. The Commonwealth provided these materials to trial counsel at approximately 5:00 p.m. that day.

On March 14, 2019, immediately prior to the suppression hearing, trial counsel met with [Mitchell] and was able to describe the new discovery materials to [Mitchell], but was unable to show him any physical copies of the new discovery materials. Due to his belief in the strength of his suppression arguments, trial counsel still recommended [Mitchell] to proceed with the suppression hearing and reject the plea offer, even in light of the new discovery materials he had received the prior evening. [Mitchell]

- 4 -

agreed with the recommendation to proceed and trial counsel did not ask for a continuance.

The court proceeded with the suppression hearing and denied both suppression motions on March 19, [2019]. The next day, trial counsel sent an email to the chief of the trial division for the Montgomery County District Attorney's office to explain the situation involving the receipt of new discovery materials on the night prior to the suppression hearing and the withdrawal of the plea offer of five (5) to twelve (12) years of imprisonment. The email further described how trial counsel believed [Mitchell] would have taken the plea deal if he had "adequate time to review everything." The Commonwealth did not respond.

PCRA Court Opinion, 1/22/21, at 3-4 (paragraph breaks added).

On March 26, 2019, Mitchell entered into a negotiated plea agreement in which he pled guilty to aggravated assault, a firearm violation, and one count of possession of a controlled substance with intent to deliver, in exchange for an aggregate 7½ to 20 years of imprisonment. Mitchell did not file any post-sentence motions or a direct appeal.

On January 28, 2020, Mitchell filed a timely *pro se* PCRA petition. The PCRA court appointed counsel, and PCRA counsel filed an amended petition on June 8, 2020. Thereafter, the PCRA court held an evidentiary hearing at which Mitchell and his trial counsel testified. By order entered August 21, 2020, the PCRA court denied Mitchell's amended PCRA petition. This timely appeal followed. Both Mitchell and the PCRA court have complied with Pa. R.A.P. 1925.

Mitchell raises the following issue on appeal:

Did the [PCRA] court err in denying the amended [PCRA petition], following [a] hearing, in which [Mitchell] argued

that ineffective assistance of counsel caused him to reject a guilty plea offer and but for the ineffective assistance there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction, sentence, or both, under the offer's terms, would have been less severe than under the judgment of sentence that in fact [was] imposed.

Mitchell's Brief at v (excess capitalization omitted).

Our standard of review is as follows:

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

When a petitioner alleges counsel's ineffectiveness in a PCRA petition, he must prove by a preponderance of the evidence that his conviction or sentence resulted from ineffective assistance of counsel "which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). Additionally, the petitioner must demonstrate:

- 6 -

(1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness[,] the petitioner must advance sufficient evidence to overcome this presumption.

*Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016) (internal citations and quotation marks omitted). *Strickland v. Washington*, 466 U.S. 668 (1984) (accord). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).

Regarding the second prong of the ineffectiveness test, trial counsel's strategic decisions cannot be the subject of a finding of ineffectiveness if the decision to follow a particular course of action was reasonably based and was not the result of sloth or ignorance of available alternatives. *Commonwealth v. Collins*, 545 A.2d 882, 886 (Pa. 1988) (cited with approval by *Commonwealth v. Hall*, 701 A.2d 190, 204 (Pa. 1997)). Counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Ervin*, 766 A.2d 859, 862-63 (Pa. Super. 2000) (quoting *Commonwealth v. Miller*, 431 A.2d 233, 234 (Pa. 1981). Our Supreme Court has defined "reasonableness" as follows:

Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable* basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record.

*Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987) (quoting *Com. ex rel. Washington v. Maroney*, 235 A.2d 349, 352-53 (Pa. 1967)). As our Supreme Court stated in *Pierce*, "the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis." *Id.* A defendant is not entitled to appellate relief simply because a chosen strategy is unsuccessful. *Commonwealth v. Buksa*, 655 A.2d 576, 582 (Pa. Super. 1995).

Here, Mitchell claims that trial counsel was ineffective when advising him regarding the Commonwealth's initial plea offer. He contends that "[t]rial counsel basically testified that he was rushed on the morning of suppression," and should have "requested more time to go over the new information" with him. *Id.* at 10. According to Mitchell, had he seen the screenshot of the Facebook Live video, he would have accepted the Commonwealth initial plea offer.

"Generally, counsel has a duty to communicate plea bargains to his client, as well as to explain the advantages and disadvantages of the offer." *Commonwealth v. Marinez*, 777 A.2d 1121, 1124 (Pa. Super. 2001). Stated differently, counsel has a duty to explain to the defendant "the relative

merits of the offer compared to the defendant's chances at trial." *Commonwealth v. Napper*, 385 A.2d 521, 521 (Pa. Super. 1978). "Failure to do so may be considered ineffective assistance of counsel if the defendant is sentenced to a longer prison term than the term he would have accepted under the plea bargain." *Marinez*, 777 A.2d at 1124.

Thus, a defendant seeking relief based on a claim that ineffective assistance of counsel caused him to reject a plea offer must show that:

> [B]ut for the ineffective assistance of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Commonwealth v. Steckley*, 128 A.3d 826, 832 (Pa. Super. 2015) (citing *Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012)).

In addition, regarding the plea-bargaining process, this Court has stated:

> Ineffective assistance of counsel claims arising from the plea-bargaining process are eligible for PCRA review. Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter into an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

> The standard for post-sentence withdraw of guilty pleas dovetails with the arguable merit/prejudice requirements for relief based on a claim of ineffective assistance of plea counsel, . . . under which the defendant must show that counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating the entry of an unknowing, involuntary, or unintelligent plea. This standard is equivalent to the "manifest injustice" standard applicable to all post-sentence motions to withdraw a guilty plea.

***Commonwealth v. Kelley***, 136 A.3d 1007, 1012-13 (Pa. Super. 2016) (citations omitted).

Applying the above standards, the PCRA court concluded that Mitchell failed to meet his burden. The court first summarized, in detail, the hearing testimony from Mitchell and trial counsel, and assessed their credibility. ***See*** PCRA Court Opinion, 1/22/20, at 9-11. In this review, the PCRA court concluded that Mitchell provided contradictory testimony regarding the importance of observing the Facebook Live screenshot. Thus, the PCRA court specifically stated that "it did not find credible any of [Mitchell's] statements regarding how his inability to see the screenshot[] prior to the suppression hearing affected his decision to proceed with the hearing." ***Id.*** at 9. As to trial counsel's testimony, the court cited counsel's belief in the strength of his defense strategy even after he had received the late discovery, but did acknowledge that, in hindsight, trial counsel believed Mitchell would have taken the original plea offer if counsel had more time to discuss the late discovery with him. ***Id.*** at 11.

Given this testimony, the PCRA court concluded that Mitchell's ineffectiveness claim lacked arguable merit because he could not establish that trial counsel's advice was unreasonable. The court explained:

Although the court finds trial counsel to be sincere in his belief and conclusions, [Mitchell's] arguments underlying his PCRA petition are not supported by the facts or the law. Trial counsel chose a course of conduct that had a reasonable basis designed to effectuate [Mitchell's] interests. During his review of the case, trial counsel identified salient issues which he believed could result in the grant of a suppression motion or, in the alternative, the Commonwealth presenting a new plea offer with even more favorable terms for [Mitchell]. Trial counsel's belief was based upon inconsistencies he had identified between the Commonwealth's discovery which he had received and the information authorities had presented in their search warrant application. These included unsupported information regarding citizen complaints, [Mitchell's] drug sale activities and [Mitchell's] appearance in a Facebook Live video in which he was brandishing a firearm. Trial counsel felt his suppression strategy was strong enough to reject the Commonwealth's plea offer and proceed with the suppression hearing. In his testimony, [Mitchell] indicated he supported this course of action.

On the evening prior to the suppression hearing, trial counsel received discovery materials from the Commonwealth which he believed did not exist. The majority of these materials actually strengthened [Mitchell's] arguments, but the Facebook Live screenshot of [Mitchell] brandishing the firearm had the potential to negatively affect the suppression strategy. Trial counsel weighed these concerns and decided that the recently received discovery materials did not warrant an alteration of the suppression strategy in any significant fashion. Trial counsel gave a description of this information to [Mitchell] the next day, including a description of the Facebook Live screenshot. Trial counsel also described the pros and cons of rejecting the plea offer and proceeding with the suppression hearing.

Trial counsel testified that although he did not show [Mitchell] the physical materials and did not have a substantial amount of time to provide these materials to [Mitchell], counsel still sincerely believed he was ready to proceed and thought he had a strong case. Trial counsel did not want to ask for a continuance due to his confidence in his strategy and his desire to ensure that [Mitchell] did not have to remain imprisoned any longer than necessary.

[Mitchell] testified that he didn't think the screenshot had any relevance to the suppression strategy and he approved the decision to reject the plea offer and proceed with the suppression hearing. [Mitchell's] testimony also indicated that, following the hearing, [Mitchell] did not believe the Facebook Live screenshot was detrimental to the argument trial counsel presented at the hearing. Trial counsel also testified that he believed he had done a good job at the hearing.

The argument that [Mitchell] would have accepted the plea offer if he had actually seen the Facebook Live screenshot prior to the suppression hearing was not advanced by [Mitchell] or trial counsel until after the court denied the suppression motion. [Mitchell's] assertion is undermined by the court's determination that his testimony at the PCRA [e]videntiary hearing was not credible.

Trial counsel's assertion that [Mitchell] would have accepted the plea offer constitutes an unsupported hypothesis regarding [Mitchell's] mindset at the time of the suppression hearing. In presenting this argument, trial counsel is essentially claiming that he was constitutionally ineffective because his suppression strategy was unsuccessful. However, the evidence demonstrates counsel had a sufficiently reasonable strategic basis to advise [Mitchell] to reject the plea offer and proceed with the suppression hearing, even in light of the newly surfaced Facebook Live video screenshot.

Further, the evidence also demonstrates that [Mitchell] had all the information necessary to make an informed decision as to whether to proceed with the suppression hearing. To allow a defendant to claim ineffectiveness simply due to an adverse result would have a chilling effect on any counsel's thought process with respect to proceeding

- 12 -

with a suppression motion or any other similar strategy. Therefore, [Mitchell] has not proven the arguable merit prong of the ineffectiveness test and trial counsel's advice to [Mitchell] to reject the plea offer cannot be construed as ineffective assistance of counsel. Accordingly, [Mitchell's] ineffective assistance of counsel claims merit no relief.

PCRA Court Opinion,1/22/21, 11-13 (paragraph breaks added; citations omitted).

Our review of the record supports the PCRA court's conclusions. The PCRA court credited the testimony of counsel over the testimony and other allegations made by Mitchell at the PCRA hearing. We cannot disturb this determination. **See Commonwealth v. Battle**, 883 A.2d 641, 648 (Pa. Super. 2005) (explaining that credibility determinations are solely within the province of the PCRA court). The PCRA court accepted as reasonable trial counsel's strategy of rejecting a favorable plea offer with the expectation of prevailing at the suppression stage. A PCRA petitioner is not entitled to appellate relief simply because a chosen strategy is unsuccessful. **Buksa**, **supra**.

Mitchell's claims to the contrary are unavailing. He summarizes these claims as follows:

> This is a case in which the prosecution was permitted to play games with discovery, the trial court allowed the government to avoid repercussions for asserting to the court that evidence did not exist, when it actually did, [and] trial counsel did not fully and completely inform [Mitchell] before litigating the case[.]

Mitchell's Brief at 9. He argues that "the prosecution miraculously came into possession of the evidence that had been assumed by the defense to be material misrepresentations in the search warrant." *Id.* He further opines that trial counsel's failure to show him "vital photographic evidence from Facebook that all but guaranteed that suppression would be denied." *Id.* According to Mitchell, "not being able to review or discuss the late discovery with his attorney, [he] had little choice but to follow trial counsel's lead and to conduct the suppression hearing." *Id.* at 10.

There is no support in the record for Mitchell's accusation against the Commonwealth regarding the late discovery. The PCRA court found as fact that the Commonwealth turned over the discovery materials at issue the same day they were received. Thus, Mitchell's arguments accusing the Commonwealth of "gamesmanship" amounts to no more than speculation. Moreover, as cited above, the PCRA court found Mitchell's testimony not credible, and found that trial counsel fully informed him about the late discovery. Finally, the PCRA court, while acknowledging trial counsel's hindsight evaluation, accepted his testimony that some of the late discovery supported the defense theory trial counsel argued at the suppression hearing.

In sum, the record supports the PCRA court's conclusion that Mitchell's ineffectiveness claim lacks merit. We therefore affirm its order denying Mitchell post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/16/2021</u>